# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1669

_____

United States of America

*Plaintiff - Appellee*

v.

Acie A. Evans

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 14, 2014
Filed: March 23, 2015

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Acie Evans entered a conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 180 months imprisonment. Evans now appeals the district court's[1] denial of his motion to

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

suppress. In particular, Evans argues that the court erred in denying his motion to suppress a firearm recovered during an inventory search of his vehicle and later incriminating statements because police officers unlawfully towed his vehicle and conducted the inventory search with an investigatory motive. We affirm.

I.

On the morning of September 4, 2012, Kansas City, Missouri police officers responded to a call of a rape in progress at a residence. After arriving and beginning an investigation, one officer observed a tan four-door car leave an apartment complex roughly 1,000 feet away from the residence. The car stopped at a stop sign about half a block from the residence and remained idle for 30 to 45 seconds, even though no other traffic was at the intersection. Meanwhile, crime scene investigators at the scene recovered a Missouri identification card on the ground by the window that the assailant had broken into to gain access to the residence. The identification card bore the name Acie Evans and contained a photograph of an African-American male. Officers then observed the same tan four-door car drive by the crime scene, traveling at a speed of less than five miles per hour. One officer identified the driver as the same man whose photograph appeared on the identification card. The officer memorized the license plate number, and another officer ran the plate through the department's system, revealing the car was registered to a Bobby Evans. Because the last name on the registration matched the photograph on the identification card and the officer identified the driver as the man pictured on the identification card, officers decided to follow the car into the nearby apartment complex.

Arriving at the complex, the officers observed the car parked in front of one of the apartment buildings. The officers believed the driver had gone into that building, and went to speak with the apartment manager to determine if anyone named Evans was leasing a unit. The apartment manager indicated that no one by the name of Evans had leased any units but that an Acie Evans was listed as an emergency contact

for one of the lessees. The apartment manager also remembered having shown an apartment to a man by the name Acie Evans before leasing it to its current occupant. While one officer spoke with the apartment manager, another entered the four-unit apartment building officers believed the driver had entered. Noticing that the door to one unit was partially open, the officer knocked on the door, and a man resembling the driver answered the door. The officer asked if he had any identification, and accompanied the man to his bedroom where he produced a Kansas identification card identifying him as Acie Evans. The officer conducted a computer check for outstanding warrants and discovered that Evans's license had been suspended. He then arrested Evans for driving without a license.

The officer informed other officers at the scene that he had arrested Evans and asked what should be done with Evans's vehicle. By this time, news crews were arriving at the location and the apartment manager wanted them to leave the private property. Officers informed the apartment manager that they believed they had a suspect in custody for the nearby rape and that Evans told the officers he resided in the unit, but the mother of his child had rented that apartment for him because an involuntary manslaughter conviction would have prevented him from renting the apartment on his own. The apartment manager informed the officers that she wanted both Evans and his vehicle removed from the property.

The officers decided to tow Evans's vehicle because of the apartment manager's request and the fact that Evans was under arrest and no other responsible party was on the scene to take custody of the vehicle. Although officers never asked Evans if there was someone else to take the vehicle, he offered that the mother of his child would be arriving within five to ten minutes. Five to ten minutes had already elapsed, and the officers decided they could wait no longer for someone to arrive to take the vehicle. Pursuant to the Kansas City Police Department Towing Policy, officers towed the vehicle to the police station and conducted an inventory search of the vehicle. During the search, officers recovered a loaded Jennings .380 caliber pistol

from the center console of the vehicle. During later questioning about the firearm, Evans made incriminating statements regarding his ownership of the weapon.

Evans was charged with being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1). Evans filed a motion to suppress the firearm and his subsequent incriminating statements, alleging that the inventory search of his vehicle was unlawful because the police officers did not follow the department's towing policy when deciding to tow his vehicle and because the officers carried out the search with an investigatory motive. The district court denied the motion to suppress, finding that the decision to tow the vehicle was lawfully based on the department's towing policy and that the officers did not have an investigatory motive in carrying out the search because they did not expect to find any evidence relating to the rape they had initially been called to investigate. Evans entered a conditional guilty plea, reserving the right to appeal the suppression ruling, and the district court sentenced him to 180 months imprisonment. Evans now appeals the denial of his motion to suppress.

II.

Evans asserts that the district court's denial of his motion to suppress was in error because the officers unlawfully towed the vehicle from the apartment complex, rendering the inventory search invalid, and that, even if they lawfully towed the vehicle, the inventory search remained invalid because the officers conducted it with an investigatory motive. When reviewing the denial of a motion to suppress, we review a district court's factual findings for clear error and legal conclusions de novo. United States v. Harris, 747 F.3d 1013, 1016 (8th Cir. 2014).

Evans first argues that the inventory search was invalid because the officers did not make the decision to tow his vehicle pursuant to the police department's towing policy. Police officers are entitled to use their discretion in deciding to impound a vehicle, provided that their decisions are based on standard criteria and not upon

suspected criminal activity. Colorado v. Bertine, 479 U.S. 367, 375 (1987). Here, the officers' decision to impound Evans's vehicle was based upon the Kansas City Police Department Towing Policy. The department's towing policy, in relevant part, provides:

> [I]n the officer's discretion, vehicles may be towed when: . . . []Any vehicle is parked on private property or upon an area developed as an off-street parking facility without the consent of the owner, lessee or person in charge of any such property or facility, and upon complaint to the police department by the owner, lessee or person in charge of such property or facility, and a summons has been presented to the owner or operator or affixed to the vehicle.

App. 16.

The district court found the decision to tow was consistent with the department's towing policy because Evans's vehicle was parked on private property, he was under arrest, and the apartment manager requested that the authorities remove the vehicle from the property. Evans asserts that this finding was in error because the district court erroneously found that the apartment manager requested that the vehicle be removed from the property. This argument is based on allegedly contradictory statements by the apartment manager. The manager's initial post-incident written statement to police describing the events includes no reference to her request to have Evans's vehicle removed from the property. In an interview with defense counsel about six weeks after the incident, the manager indicated that she had not requested that the police officers remove Evans's vehicle. She later testified that she understood defense counsel to have been generally questioning her about whether the defendant drove a car when she answered no to their question. And, in a later police interview, she indicated that she believed she had requested that the officers remove Evans's vehicle from the apartment complex because she "want[ed] his vehicle and [] him gone." At the suppression hearing she testified that she specifically asked officers to

remove the vehicle from the property, and one of the responding officer's testimony corroborated this account.

After reviewing the evidence, we conclude that the district court's determination that the manager requested the vehicle be moved was not clearly erroneous. See United States v. Sanders, 130 F.3d 1316, 1317 (8th Cir. 1997) (explaining that our court should find clear error if the finding of the district court is "'unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made'" (quoting United States v. Ruiz, 935 F.2d 982, 984 (8th Cir. 1991))). Although the apartment manager did not mention her request that the vehicle be towed in her initial post-incident statement to police, her statement did not deny that she had made such a request, and she clarified in a subsequent police interview that she had requested that the vehicle be moved. She also provided testimony explaining her contradictory statement to defense counsel. The district court was permitted to credit this testimony. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985) (affording trial judges great deference in making credibility determinations because they are in the best position to assess a witness's testimony for credibility). Evans's vehicle was parked on private property without the consent of the apartment manager, and although the officers did not present him with a summons, they had arrested him for driving without a valid license. We therefore believe that the officers removed Evans's vehicle pursuant to the police department's towing policy, and the decision to tow the vehicle and conduct an inventory search was thus lawful.

Evans next argues that the inventory search was invalid because officers conducted it with an investigatory motive. If an impoundment is otherwise valid, an investigatory motive does not prevent police from towing a vehicle and conducting an inventory search. United States v. Garner, 181 F.3d 988, 991-92 (8th Cir. 1999). An investigatory motive does not render an inventory search invalid unless that

motive is the officers' sole motivation in carrying out the search. United States v. Marshall, 986 F.2d 1171, 1176 (8th Cir. 1993). Departing from standardized procedures for conducting an inventory search is evidence that helps prove the search was a pretext and that the officers' sole motive in carrying out the search was investigatory. See United States v. Rowland, 341 F.3d 774, 780-82 (8th Cir. 2003). But, officers may be alert for the presence of incriminating evidence during an inventory search. Marshall, 986 F.2d at 1176.

The district court, in adopting the magistrate judge's report and recommendations, specifically found that no evidence indicated the officers expected to find any evidence tying Evans to the rape by conducting an inventory search of his vehicle. Nothing in the record indicates that this factual finding constitutes clear error, and we will not disturb the district court's finding. Further, even if the district court had found the officers to have acted with an investigatory motive, no evidence indicates that it was their sole motive in carrying out the search. The officers followed the standardized procedure for conducting an inventory search and Evans provided no evidence showing the officers' inventory search was a pretext for further investigating the rape claim. Because we do not believe the officers acted with an investigatory motive that would render the inventory search invalid, Evans's subsequent incriminating statements need not be excluded as fruit of the poisonous tree. The district court did not err in denying Evans's motion to suppress.

III.

For the foregoing reasons, we affirm the district court's denial of Evans's motion to suppress.

_____