RENDERED: JUNE 16, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

**FINAL**

2014-SC-000419-DG

2015-SC-000171-DG

DATE 7-7-16 Ena Groun, D. C.

COMMONWEALTH OF KENTUCKY
APPELLANT/<br>CROSS APPELLEE

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2012-CA-001621-DG
KENTON CIRCUIT COURT NO. 11-CR-00678-002

IRIS JENNINGS
APPELLEE/<br>CROSS APPELLANT

## OPINION OF THE COURT BY JUSTICE VENTERS

## AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

Appellee/Cross Appellant, Iris Jennings (Appellee), was with her boyfriend, Alvin McDaniel, when he shot Boysie Washington.[1] For her conduct immediately before the shooting, Appellee was convicted of one count of criminal facilitation of first degree assault; she was sentenced to one year imprisonment, probated for three years. She appealed the conviction to the Court of Appeals.

---

[1] McDaniel was convicted of two counts of first degree assault and of being a second-degree persistent felony offender for shooting Boysie Washington and Tarsha Henderson. *McDaniel v. Commonwealth*, 415 S.W.3d 643 (Ky. 2013).

The Court of Appeals reversed Appellee's conviction on two separate grounds-and remanded the case for a new trial. First, the Court of Appeals concluded that the jury instructions were prejudicially flawed. Second, the Court of Appeals concluded that the trial court had not adequately addressed Appellee's alleged *Miranda* violation. The Commonwealth sought discretionary review only of the instructional error issue, leaving intact the Court of Appeals' reversal of the *Miranda* issue. We granted the Commonwealth's motion for discretionary review. We reverse the Court of Appeals' conclusion that the jury instructions were flawed. The trial court did not err by not including a jury instruction based upon KRS 506.100(1).

In a cross motion for discretionary review, which was also granted, Appellee challenged the Court of Appeals' conclusions that the trial court properly overruled her motions for a directed verdict and that the trial court had properly denied Appellee's motion to suppress evidence obtained as a result of the seizure and search of Appellee's cell phone. We affirm the Court of Appeals with respect to the issues raised by Appellee in in her cross motion for discretionary review. The trial court did not err when it overruled her motions for a directed verdict and when it denied her motion to suppress the evidence obtained from her cell phone.

Because of the remand of the case by the Court of Appeals for reasons not brought before this Court on discretionary review, and because our disposition of the issues before us does not negate the purpose of the remand,

2

we remand the case to the Kenton Circuit Court for further proceedings as directed by the Court of Appeals and consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee's teenage daughter got into a physical fight with a schoolmate whose parents are Boysie Washington and Tarsha Henderson. Although the facts are disputed, Appellee apparently believed that Boysie, unhappy with the outcome of the first fight between the two girls, instigated a second fight under his oversight to keep others from interfering. The police responded to the scene and broke up the fight.

Angered by what he perceived as Boysie's role in getting the girls to fight for a second time, McDaniel, armed with a handgun, went in search of Boysie. Appellee got into McDaniel's car and went with him. McDaniel did not know Boysie and would not be able to recognize him by sight; but Appellee did. As the pair drove through the neighborhood, they passed Boysie and Appellee called out Boysie's name, thus alerting McDaniel to the location of his victim. McDaniel then got out of the car and shot Boysie four times, hitting him it the arm, ribs, thigh, and hip. McDaniel returned to the car and drove away with Appellee.

Appellee was indicted for criminal facilitation in connection with the assault. She was tried, convicted, and sentenced as set forth above. The Court of Appeals reversed the conviction, in part because it found that the trial court had improperly instructed the jury. We address that issue first.

3

## II. ANALYSIS

### A. Appellee was not entitled to a jury instruction based upon KRS 506.100(1).

As an issue of first impression in this Court, the Commonwealth contends that the Court of Appeals erred when it determined that the jury instruction on criminal facilitation should have incorporated the language of KRS 506.100(1), which provides that "[a] person is not guilty of criminal facilitation when: (1) The crime facilitated is so defined that his conduct is inevitably incident to its commission."

Citing *Martin v. Commonwealth*, 409 S.W.3d 340 (Ky. 2013), *Thornton v. Commonwealth*, 421 S.W.3d 372 (Ky. 2013), and *Webster v. Commonwealth*, 438 S.W.3d 321 (Ky. 2014), the Commonwealth first argues that any error in the failure to instruct the jury on the KRS 506.100(1) exemption was waived as invited error. During five discussions of jury instructions with the trial court noted in the record, Appellee never requested that KRS 506.100(1) language be included in a jury instruction; nor did she ever voice an objection to the trial court's instructions, which were comparable but not identical to her own proposed instructions.[2] Like the trial court's instructions, the proposed jury

---

[2] The trial court instructed the jury that Appellee could be found guilty of facilitation of first degree assault if it found:

A. That . . . [Appellee] provided Alvin McDaniel with the physical identification of Boysie Washington;

B. That Alvin McDaniel intended to use such identification for the purpose of committing First Degree Assault upon Boysie Washington;

C. That when [Appellee] provided the physical identification of Boysie Washington to Alvin McDaniel, she knew Alvin McDaniel intended to commit a First

4

instructions tendered by Appellee omitted the exemption theory set forth in KRS 506.100(1).

It is fundamental that the trial judge must instruct the jury on the whole law of the case, RCr 9.54(1), but that duty is tempered by the parties' obligation to inform the court of its instructional preferences. RCr 9.54(2); *Martin*, 409 S.W.3d at 345. We are not persuaded Appellee's failure to specifically request an instruction on the KRS 506.100(1) exemption qualifies as either invited or induced error. Appellee failed to object to the trial court's omission of the exemption theory, but she did not affirmatively urge or encourage the omission of the instruction as was the case in *Mullins v. Commonwealth*, 350 S.W.3d 434, 439 (Ky. 2011). Nevertheless, we need not determine whether Appellee is estopped by a waiver or invitation of the alleged error because we conclude the omission of the KRS 506.100(1) exemption was not error at all.

The Court of Appeals concluded that the failure of the trial court to include an instruction on KRS 506.100(1) was palpable error. Although Appellee's argument, as well as the rationale employed by the Court of Appeals,

---

Degree Assault upon Boysie Washington and that the physical identification would provide him with a means to do so;

D.    That Alvin McDaniel thereafter did commit a First Degree Assault upon Boysie Washington;

AND

E.    That after providing Alvin McDaniel with the physical identification of Boysie Washington, [Appellee] did not make a substantial effort to prevent the First Degree Assault of Boysie Washington.

is somewhat obscure and self-contradictory, we are persuaded they have misconceived the fundamental nature of the statute.

Appellee contends that an instruction based upon KRS 506.100(1) was essential because the jury heard evidence from which it might reasonably conclude that Appellee's participation in the shooting of Boysie was "inevitably incident" to that crime because McDaniel could not have shot Boysie if Appellee had not identified him. Whether the principal offender would have "inevitably" committed the crime without the facilitator's participation is not material to the application of KRS 506.100(1). The exemption provided in the statute relates to the essential elements of the crime being facilitated as that crime is defined by the legislature. It has nothing to do with the particular conduct of the parties involved in a particular criminal event and whether the particular crime would have "inevitably" occurred without the facilitator's help.

We have not heretofore had the occasion to address the purpose and meaning of KRS 506.100(1). Substantially similar language is also used in two other statutes. KRS 506.050(4) provides an analogous exemption for criminal conspiracy. It states: "No person may be convicted of conspiracy to commit a crime when . . . *that crime is so defined that his conduct is inevitably incident to its commission.*" (Emphasis added). KRS 502.040(1) provides the same exemption for accomplice liability: "A person is not guilty [as an accomplice] for an offense committed by another person when: (1) *The offense is so defined that*

*his conduct is inevitably incident to its commission . . . ."* (Emphasis added.).
See also KRS 509.050.[3]

Like KRS 506.100(1), the exemptions found in KRS 506.050(4) and KRS 502.040(1) have also remained under the radar of judicial interpretation. The 1974 Kentucky Crime Commission/ LRC Commentary accompanying KRS 502.040 ("Complicity") and KRS 506.040 ("Criminal Conspiracy") provides useful insight which informs our understanding of the application of KRS 506.100(1).

The Commentary for KRS 502.040 ("Complicity") explains:

[KRS 502.040(1)] provides for two exemptions to the general doctrine of imputed liability for conduct which aids in the perpetration of crime. The first is for individuals whose protection is the very purpose of a criminal prohibition. As a consequence of this exemption, for example, the female party to a statutory rape cannot be convicted as an accomplice. The second is for a person who joins another in a two-party transaction that constitutes a crime for which criminal sanctions are imposed only on the other party. As a consequence of this exemption, the purchaser of an alcoholic drink cannot be convicted as an accomplice under a statute which provides a penalty only for the seller. In each of these examples, the offense is so defined that the conduct of the so-called accomplice is "inevitably incident to its commission.

The Commentary for KRS 506.040 ("Criminal Conspiracy") states:

---

[3] "A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter *and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense,* unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose. . . ." (Emphasis added).

7

For non-inchoate offenses which are defined in such a way as to require concerted conduct . . . KRS 506.050(4) provides an exemption from the conspiracy offense for conduct of this type. It applies to two types of offenses, the first of which is a crime having as its principal element an agreement between two people, such as bribery. The person who gives the bribe cannot be held to have conspired with the person who receives the bribe. *The second type of offense to which the exemption applies is one which is so defined that an offender's co-party is necessarily involved in commission of the offense. An example is statutory rape. Because of KRS 506.050(4), a defendant cannot be held to have conspired with his victim to commit this offense.*

(Emphasis added).

Upon review and thoughtful consideration, it becomes apparent KRS 506.050(4) is simply a codification of the well-established common law doctrine known as "Wharton's Rule" which has been incorporated into the modern penal codes of many states,[4] including Kentucky, and which the drafters of our penal code extended to the crime of criminal facilitation under KRS 506.080 and to accomplice liability (complicity) under KRS 502.020.

> The widely recognized rule of construction known as Wharton's Rule states that when a substantive offense necessarily requires the participation of two persons, and where no more than two

---

[4]     *See Commonwealth v. Fisher*, 627 A.2d 732, 733 (Pa. Super. 1993) ("[A] person cannot be convicted as an accomplice to a crime if 'the offense is so defined that his conduct is inevitably incident to its commission.' 18 Pa.C.S.A. § 306(f)(2)."); *Robinson v. State*, 815 S.W.2d 361, 363 (Tex. App., 1991) (quoting 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.8(e) at 165–66 (1986)) ("*Another exception is where the crime is so defined that participation by another is inevitably incident to its commission.* It is justified on the ground that the legislature, by specifying the kind of individual who was guilty when involved in a transaction necessarily involving two or more parties, must have intended to leave the participation by the others unpunished . . . . Thus, under this exception one having intercourse with a prostitute is not liable as a party to the crime of prostitution, *a purchaser is not a party to the crime of illegal sale.*).

8

persons are alleged to have been involved in the agreement to commit the offense, the charge of conspiracy will not lie. 1 R. Anderson, Wharton's Criminal Law & Procedure s 89 at p. 191 (1957).

*State v. Langworthy*, 594 P.2d 908, 910 (Wash. 1979).

> As generally stated, [Wharton's] Rule prohibits prosecution of a conspiracy to commit a particular crime when the commission of that crime requires the participation of more than one person.
>
> . . .
>
> The crimes of dueling, bigamy, adultery, and incest are the classic Wharton's Rule offenses. Commentators have added to that list the crimes of pandering, gambling, the buying and selling of contraband goods, and the giving and receiving of bribes.

*People v. Laws*, 613 N.E.2d 747, 748-50 (Ill. 1993) (citations omitted).

As a vestige of Wharton's Rule, KRS 506.100(1) simply provides that one cannot be guilty of criminal facilitation for participation in a crime that by its very definition requires the mutual participation of two or more persons. For example, the crime of sports bribery under KRS 518.040(2)[5] is a Class D felony so defined as to require the participation of a sports official and a person conferring (or offering to confer) a benefit upon that sports official. KRS 506.100(1) precludes the state from charging the sports official with criminal facilitation for providing the briber with the means or opportunity to commit sports bribery, conduct that would otherwise constitute the crime of criminal facilitation. For the same reason, pursuant to KRS 506.050(4), the sports official could not

---

[5]KRS 518.040 (1): "A person is guilty of sports bribery when he: . . . (b) Offers, confers or agrees to confer any benefit upon a sports official with intent to influence him to perform his duties improperly."

9

be charged with conspiracy to commit sports bribery, and under KRS 502.040(1), he could not be charged with sports bribery as an accomplice of the briber. To be clear, a culpable sports official might be guilty of some other offense, but under our statutory adaptations of Wharton's Rule, he cannot be charged with criminal facilitation of sports bribery, conspiracy to commit sports bribery, or sports bribery by complicity with the briber.

With that background, we turn our attention back to the case at hand. Appellee was charged with facilitating the crime of first degree assault by providing McDaniels with the means to commit the crime; she gave him the knowledge he needed to identify his intended victim. The crime facilitated was first degree assault, which as defined in KRS 508.010(1) does not require the participation of two persons; it does not as defined require one person to identify the victim and another to strike the blow. As a matter of law, Appellee's participation was not "inevitably incident" to the crime of assault. KRS 506.100(1) is inapplicable and stands as no barrier to Appellee's prosecution.

Because the application of KRS 506.110(1) addresses itself exclusively to the nature of the crime and is independent of any factual particulars of the specific case, we cannot conceive that it would ever be an appropriate issue for a jury's consideration such that it would be included in jury instructions. The United States Supreme Court noted that "[t]he classic formulation of Wharton's Rule requires that the conspiracy indictment be dismissed before trial.

10

Wharton's description of the Rule indicates that, where it is applicable, an indictment for conspiracy 'cannot be maintained.'" *Iannelli v. U. S.*, 420 U.S. 770, 774 (1975). Thus, the exemption is intended to preclude prosecution as a matter of law; it is not a factual issue to be decided by the jury.

For the foregoing reasons, we conclude that the trial court correctly omitted a jury instruction based upon KRS 506.100(1). We therefore reverse that aspect of the Court of Appeals' opinion.

## B. Appellee was not entitled to a directed verdict.

The trial court denied Appellee's motions for a directed verdict and the Court of Appeals affirmed that decision. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

KRS 506.080(1) provides that one is guilty of criminal facilitation to first degree assault "when, acting with knowledge that another person is committing or intends to commit [first degree assault], he engages in conduct which knowingly provides such person with means or opportunity for the commission of [first degree assault] and which in fact aids such person to commit [first degree assault]."

Appellee argues that the Commonwealth's case was based entirely upon circumstantial evidence that does not support a reasonable inference that she knew McDaniel intended to shoot Boysie when she called out Boysie's name,

11

and that the evidence does not support the reasonable inference that her conduct provided McDaniel with a means to shoot Boysie. We disagree. Upon review of the evidence we are satisfied that the evidence easily satisfied the *Benham* standard and that the trial court properly denied her motion for a directed verdict. We agree that Appellee presented a plausible case in support of her innocence, but her evidence is not so compelling as to negate the contrary inferences that may reasonably be drawn. We affirm that aspect of the Court of Appeals' opinion.

## C. The trial court properly denied Appellee's motion to suppress the evidence found on her cell phone.

After the trial court denied Appellee's motion to suppress, the Commonwealth introduced into evidence at trial four text messages which police had discovered when they examined Appellee's cell phone. Appellee contends that the initial seizure of her phone by police was unlawful and that the subsequent search of her phone, which led to the discovery of the incriminating evidence, exceeded the scope of the consent provided by Appellee, and was therefore, illegal.

The Court of Appeals concluded that Appellee's argument with respect to the initial seizure of her phone was unpreserved and it declined to address that argument. We agree with the Commonwealth that Appellee's suppression motion did not challenge the seizure of her phone, and so that issue was never addressed by the trial court and remains unpreserved. Appellee's contention that the police officers searched the contents of her phone beyond the limited

12

consent she gave them was preserved, and so we proceed to consider that argument.

Soon after the shooting, police identified Appellee as a "person of interest" with whom they wished to speak. Appellee went to the police station to discuss the incident. After being asked to leave her cell phone on a detective's desk, she was ushered into to an interview room. According to the detective, police interviewers routinely take cell phones away from the interviewee to avoid distractions during the interview. Shortly after the start of the interview, Appellee was advised of her *Miranda* rights.

During the interview, Appellee told the police that she and McDaniel exchanged text messages, and that his phone number was stored in her cell phone under a pet name she used for him. When the detective asked to examine her phone to find McDaniel's phone number, Appellee consented to the officer's search of her phone for that purpose. The trial court concluded that the officer had not improperly examined the contents of the phone in excess of Appellee's consent and so it denied the motion to suppress. The Court of Appeals affirmed that ruling.

When reviewing a ruling on a suppression motion, we defer to the trial court's findings of fact if they are not clearly erroneous. Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Simpson v. Commonwealth*, 474 S.W.3d 544, 546-547 (Ky. 2015). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas*

13

*Corporation v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). We review the trial court's application of the law to the facts de novo. *Id.*

From the evidence presented at the suppression hearing, the trial court found that the Appellee's consent to search the cell phone for McDaniel's phone number was not limited to specific designated files, such as her "contacts" directory or her text messages. The trial court found that Appellee authorized the officer to look for McDaniel's number and that the detective did not extend his search beyond the places one might reasonably expect to find a phone number. After examining the phone, the officer used information gleaned from it to obtain a search warrant authorizing a broader examination of the phone.

Upon review of the record, we find that the trial court's factual findings were supported by substantial evidence. Consequently, the trial court's findings are binding on our analysis whether the detective's search exceeded the scope of Appellant's consent.

"Objective reasonableness" is the standard used to the measure the scope of a person's consent to search under the Fourth Amendment. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citations omitted). We assess the scope of the search by asking "what would the typical reasonable person have understood by the exchange between the [detective] and [Appellee]?" *Id.*

Appellee's consent did not expressly limit the search to the phone's "contact" directory listings. It was objectively reasonable for the detective to look for McDaniels' phone number in places other than Appellee's "contacts." Contact information, including phone numbers, are routinely exchanged by

14

text messages so it is objectively reasonable to look there for a phone number. Furthermore, the detective testified that, although he looked at text messages on Appellee's phone, he did not see the particular messages at issue in this case until after securing the warrant. We agree with the trial court and the Court of Appeals that the text messages introduced into evidence were not subject to exclusion based upon the Appellee's premise that the search exceeded the consent.

We might agree with Appellee that the detective exceeded his authority when he looked at photos stored on the phone. He testified that he only "clicked" on the photo that appeared in Jennings' contacts beside the entry identified as "my man." Any overreach in that aspect of his investigation did not produce the evidence that Appellee seeks to suppress. We therefore affirm the Court of Appeals' conclusion that the trial court properly declined to suppress the incriminating text messages.

### III. CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals' opinion insofar as it concluded that the jury instructions were erroneous; we otherwise affirm the Court of Appeals. Accordingly, we remand the case to the trial court for further proceedings consistent with this opinion and those portions of the Court of Appeals' opinion affirmed by this Court or not brought before us on discretionary review.

All sitting. All concur.

COUNSEL FOR APPELLANT/CROSS APPELLEE:

Andy Beshear
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General


COUNSEL FOR APPELLEE/CROSS APPELLANT:

Kathleen Kallaher Schmidt
Assistant Public Advocate