RENDERED: FEBRUARY 16, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000063-DG

CLARENCE L. COBB                                                APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-000419-MR
GRAVES CIRCUIT COURT NO. 13-CR-00119

COMMONWEALTH OF KENTUCKY                     APPELLEE

**OPINION OF THE COURT BY JUSTICE WRIGHT**

**<u>AFFIRMING</u>**

Clarence Cobb entered a conditional guilty plea in Graves Circuit Court to possessing a handgun as a convicted felon, possessing marijuana, and operating a motor vehicle on a suspended license. The trial court sentenced Cobb to five years' imprisonment; however, the plea agreement allowed Cobb to appeal the trial court's order denying his motion to suppress evidence found in the vehicle he drove at the time of his arrest. Cobb appealed the trial court's order, and the Court of Appeals affirmed. Cobb moved this Court for discretionary review, and we granted his motion. On appeal, Cobb argues the Court of Appeals erred by affirming the trial court's order denying his motion to suppress evidence because police illegally seized and searched his vehicle. We disagree. Therefore, we affirm the judgment of the Court of Appeals.

# I. BACKGROUND

While on routine patrol, Mayfield Police Officer Rodney Smith believed he recognized a driver whom he previously arrested for driving on a suspended license. Officer Smith followed the car until it pulled into a driveway and the occupant exited the vehicle. The driver identified himself as Keith Burton when questioned by Officer Smith. Believing he confused the driver of this car with the previous arrestee, Officer Smith returned to his cruiser. Officer Smith watched as the driver entered a different residence from the driveway in which he parked. At that point, Officer Smith accessed the jail's website and retrieved a photo of Keith Burton. He realized the driver of the car had given him a false name, and he went to the house the driver entered. Once confronted with a photo of Keith Burton, the driver admitted he was Clarence Cobb—the man Officer Smith previously arrested for driving on a suspended license. After verifying that Cobb's license remained suspended, Officer Smith placed Cobb under arrest.

Having seen the police make an arrest, a vigilant neighbor came outside and informed Officer Smith she was the caretaker of the elderly man in whose driveway Cobb parked. The neighbor told police that Cobb did not live in that home, that Cobb's car did not belong in the driveway where he parked it, and Cobb did not have permission to park there.

At that point, Officer Smith seized the vehicle, called a tow truck, and conducted an inventory search pursuant to department policy. Another officer arrived on the scene to assist in the inventory search. During that search,

2

police opened the center console of the vehicle and found marijuana, rolling papers, and a loaded handgun. The seizure of Cobb's vehicle and its subsequent search are the focus of this appeal.

## II. ANALYSIS

### A. The Record Contains Substantial Evidence Supporting the Trial Court's Findings of Fact

When reviewing a motion to suppress evidence, our analysis is two-fold. *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011). First, "we defer to the trial court's findings of fact if they are not clearly erroneous. Findings of fact are not clearly erroneous if they are supported by substantial evidence. Substantial evidence is evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Commonwealth v. Jennings*, 490 S.W.3d 339, 346 (Ky. 2016) (internal citations and quotation marks omitted). Secondly, we review a lower court's application of the law to the facts de novo. *Id.*

Cobb argues we should not defer to the trial court's finding that the Mayfield Police Department had a standard policy on towing vehicles. Cobb contends that the trial court's finding was clearly erroneous because the trial court relied solely upon the testimony of Officer Smith. When questioned by the trial court during the suppression hearing, Officer Smith testified that the Mayfield Police Department had a written policy on towing vehicles. Furthermore, Officer Smith testified that standard procedure required police to conduct an inventory search before towing a vehicle in order to protect the police, the vehicle owner, and tow-truck driver.

3

On another matter, Cobb identifies "language that could be misinterpreted" in the trial court's order. Specifically, the trial court's order stated that, "the automobile was parked in a neighbor's driveway, and the caretaker of the person who lived there came out and spoke to the officer about the car being in the driveway." Whether the caretaker emerged from her home or the home of the elderly man in whose driveway Cobb parked is immaterial to our analysis. What remains relevant is Officer Smith's testimony in which he clearly stated a vigilant neighbor, Ms. Biggers, told him that she took care of the elderly gentleman who owned the property where Cobb parked his vehicle, that she did not know Cobb, and that Cobb's car did not belong in that driveway.

In previous cases, we concluded that an officer's testimony provides sufficient evidence to meet the substantial evidence standard. *E.g. Williams*, 364 S.W.3d at 68; *Chavies v. Commonwealth*, 354 S.W.3d 103, 108 (Ky. 2011) ("Based on the officer's testimony, we find there is substantial evidence supporting the trial court's finding. . . ."). Our review of the record leads us to agree with the Court of Appeals' conclusion that Officer Smith's testimony is sufficient to establish substantial evidence supporting the trial court's findings of fact. Officer Smith's testimony is of requisite substance and relevance to invoke a conviction of veracity in the minds of reasonable people. *See Jennings*, 490 S.W.3d at 346. Therefore, we affirm the Court of Appeals' holding that the trial court's findings of fact were not clearly erroneous.

4

Now, we review de novo the application of the law to these facts. *Williams*, 364 S.W.3d at 68.

## B. Warrantless Searches Are Per Se Unreasonable, Subject Only to a Few Well-Established Exceptions

### 1. *A Search Incident to Arrest is But One Exception to the Warrant Requirement*

Cobb contends that police illegally seized and searched his car, thus requiring this Court to reverse the judgment of the Court of Appeals. As we said in *Robbins v. Commonwealth*, 336 S.W.3d 60, 63 (Ky. 2011), "[w]arrantless searches are '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" (Quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Therefore, in order to determine whether police illegally seized and searched Cobb's car, we must analyze whether the search and seizure fits into one of the exceptions to the Fourth Amendment's general warrant requirement.

In this case, Cobb conflates two wholly-separate exceptions to the warrant requirement: 1) a search incident to arrest, and 2) an inventory search after seizure. Cobb argues that police conducted a thinly-veiled search incident to arrest that does not comport with the dictates of the Supreme Court of the United States opinion in *Arizona v. Gant*, 556 U.S. 332, 338 (2009). *Gant* significantly narrowed the circumstances under which police may search an automobile incident to arrest. The Supreme Court of the United States set out two permissible scenarios when the passenger compartment of a car may be

5

searched, after an arrest, without a warrant. First, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search . . . ." *Gant*, 556 U.S. at 351. Secondly, police may search a vehicle incident to a recent occupant's arrest if "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* Importantly, however, the *Gant* Court clarified that "[w]hen these justifications are absent, a search of an arrestee's vehicle will be unreasonable *unless* police obtain a warrant *or show that another exception to the warrant requirement applies.*" *Id.* (emphasis added). Despite Cobb's argument to the contrary, the holding in *Gant* limiting searches incident to arrest does not apply here. *Gant* exempted from its holding searches covered by other exceptions to the warrant requirement. The Commonwealth never argued that it met the *Gant* exceptions. As such, our analysis turns upon whether *another* exception to the warrant requirement applies to the instant case.

### 2. Inventory Searches are a Well-Defined Exception to the Warrant Requirement of the Fourth Amendment

The Supreme Court of the United States recognized in *Colorado v. Bertine*, 479 U.S. 367, 371 (1987), that inventory searches are a well-defined exception to the Fourth Amendment's warrant requirement. After *Bertine*, courts across the country have recognized that "[v]ehicle inventories are an exception to the general warrant requirement." *Hunnicutt-Carter v. State*, 308 P.3d 847, 851 (Wyo. 2013); *Accord United States v. Hockenberry*, 730 F.3d 645,

6

658 (6th Cir. 2013); *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008); *Commonwealth v. Lagenella*, 83 A.3d 94, 102 (Pa. 2013).

An inventory search is a well-defined exception to the general warrant requirement; therefore, we analyze the lawfulness of the seizure of Cobb's vehicle and its subsequent search within the confines of that exception.

### a. A Lawful Inventory Search Requires a Reasonable Seizure

Since the need for an inventory search arises only after police seize a vehicle without a warrant, the lawfulness of that inventory search turns first upon the reasonableness of the seizure. *Commonwealth v. Campbell*, 59 N.E.3d 394, 398 (Mass. 2016) ("Reasonableness" is the "touchstone" when determining the propriety of a warrantless seizure.); *Gauster*, 752 N.W.2d at 502. Noting that the Fourth Amendment only prohibits unreasonable searches and seizures, the Supreme Court of the United States stated that when determining the lawfulness of a seizure, "[t]he relevant test is . . . the reasonableness of the seizure under all of the circumstances. The test of reasonableness cannot be fixed by Per se Rules; each case must be decided on its own facts." *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976) (citing *Coolidge v. New Hampshire*, 402 U.S. 443, 509-510 (1971); *see also Cooper v. California*, 386 U.S., 58, 59 (1967) ("Whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . ."). Therefore, we must look to the facts of this case concerning what information Officer Smith knew when he seized Cobb's vehicle.

At the time of the seizure, Officer Smith: 1) observed Cobb operating a vehicle on a public roadway after previously arresting him for driving on a suspended license; 2) attempted to confirm his identity by asking for his name; 3) observed Cobb park his vehicle in a different driveway from the residence he entered; 4) verified that Cobb lied by providing a false name; 5) confirmed that Cobb's license remained suspended; 6) was told by the caretaker of the elderly man who owned the property that Cobb parked his vehicle on private property without permission; and 7) arrested Cobb for operating a vehicle on a suspended license.

In *Opperman*, 428 U.S. at 373, the Supreme Court upheld an inventory search after police seized and impounded a vehicle with multiple parking violations that was unlawfully parked in a parking spot on the side of a public street. Here, according to the record on appeal, courts in Fulton and Graves County entered a combined total of six guilty judgments against Cobb for driving on a suspended license, while a seventh charge remained pending at the time of this incident. We are unclear whether Officer Smith knew of all seven times police charged Cobb with driving on a suspended license. However, per Officer Smith's testimony at the suppression hearing, he knew of at least one instance: he assisted in a prior arrest of Cobb for driving on a suspended license.

In *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004), the United States Court of Appeals for the Eighth Circuit stated that "[p]olice may take protective custody of a vehicle when they have arrested its occupants, even if it

8

is lawfully parked and poses no public safety hazard." (Internal citations and quotation marks omitted). And in *United States v. Evans*, 781 F.3d 433, 437 (8th Cir. 2015), the Eighth Circuit upheld the warrantless seizure and inventory search of Evans' vehicle after police arrested him for driving without a valid license and after parking his vehicle on private property without permission. As in *Evans*, Cobb drove without a valid license and parked his vehicle on private property without permission. Not only did Cobb commit an offense against the Commonwealth and violate a court order by driving on a suspended license, Cobb also trespassed upon the private property of an elderly man. And once police arrested Cobb, his vehicle would have been left illegally blocking the elderly man's driveway had it not been impounded.

Once Officer Smith diligently ascertained the totality of the situation, he arrested Cobb and seized Cobb's car. Officer Smith followed his Department's policy by conducting an inventory search before towing Cobb's vehicle. We see no indication that Officer Smith arrested Cobb and then seized his vehicle in order to search it for evidence of an additional crime without obtaining a warrant. Likewise, we see no difference between seizing the vehicle of one who received multiple parking violations, as in *Opperman*, and seizing the vehicle driven by Cobb who habitually violated the law by operating a vehicle on a suspended license. Nor do we see a distinction between the rationale validating the seizure of a vehicle unlawfully parked in a parking spot on the side of a public street, as in *Opperman*, and seizing a vehicle used to trespass unlawfully upon private property. In sum, we hold that under these circumstances, police

acted reasonably in seizing Cobb's vehicle and performing the subsequent inventory search of its contents.

### b. *The Scope of the Inventory Search Was Reasonable*

Cobb contends that the seizure and search in question violate principles outlined in *Bertine*, 479 U.S. 367, and *Florida v. Wells*, 495 U.S. 1 (1990). In *Bertine*, when conducting the inventory search of the impounded vehicle, "[t]he officer opened a closed backpack in which he found controlled substances, cocaine paraphernalia, and a large amount of cash." *Bertine*, 479 U.S. at 369. The Supreme Court's analysis primarily focused on the standardized criteria necessary in the *conduct* of the inventory search, specifically whether the Officer improperly opened and searched the backpack. The Court upheld the search of the backpack and went on to uphold the discretion given to the officer in deciding to impound rather than lock and park the vehicle.

In *Wells*, the Supreme Court invalidated part of an inventory search in which the Florida Highway Patrol opened a locked suitcase found in the trunk of an impounded car. The locked suitcase contained a large quantity of marijuana. Because the Florida Highway Patrol lacked a policy with respect to opening closed containers in the course of an inventory search, the Court affirmed the suppression of the evidence of the marijuana found in the suitcase.

Contrary to Cobb's assertion, these two cases concern the necessity that police abide by standard criteria while conducting an inventory search. In fact, the Supreme Court's holding in *Bertine* specifically references inventory

10

procedures, "[w]e conclude that here, as in [*Illinois v.*] *Lafayette,* [462 U.S. 640, 648 (1983),] reasonable police regulations *relating to inventory procedures* administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine,* 479 U.S. at 374 (emphasis added).

In *Wells,* 495 U.S. at 4, the Supreme Court stated, "[o]ur view that standardized criteria, *or established routine,* must *regulate the opening of containers found during inventory searches* is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (Internal citations and quotation marks omitted) (emphasis added). The Court reasoned, that "[t]he policy *or practice governing inventory searches* should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime[.]" *Id.* (emphasis added).

Here, when police found the loaded handgun during the inventory search, they merely opened the center console—a factory installed component of the vehicle—a routine practice when inventorying the contents of a vehicle. In fact, it would be impossible for police to complete an inventory search of the vehicle without opening a compartment in the center of the car. Therefore, we conclude that police acted reasonably in conducting the inventory search.

11

## C. Section 10 of the Kentucky Constitution Provides No Greater Protection than the Federal Fourth Amendment in the Context of Warrantless Searches

Cobb argued to the Court of Appeals—and argues now—that Section 10 of the Kentucky Constitution provides greater protection than the Fourth Amendment of the federal Constitution. Cobb contends that this Court's holding limiting the circumstances in which a vehicle may be impounded outlined in *Wagner v. Commonwealth*, 581 S.W.2d 352, 356 (Ky. 1979), *overruled by Estep v. Commonwealth*, 663 S.W.2d 213 (Ky. 1983), governs the outcome of this case. However, in *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996), after noting the similarities in language between the state and federal provisions in the context of warrantless searches, we held that "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment." For more than two decades, this Court has rendered opinions affirming this principle of Kentucky constitutional law, and we see no reason to address Cobb's argument further.

To the extent not previously made clear over twenty years of our case law from *LaFollette* to *Chavies*, 354 S.W.3d at 107, to our recent holding in *Commonwealth v. Cox*, 491 S.W.3d 167, 170, fn. 2 (Ky. 2015) ("The Kentucky Constitution on this subject mirrors its federal counterpart and is considered co-extensive to the Fourth Amendment."), we expressly overrule the holding in *Wagner*, 581 S.W.2d at 356, that within the context of warrantless searches, Section 10 of the Constitution of this Commonwealth provides greater

protection than the Fourth Amendment of the Constitution of the United States.

## III.     CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

SUSAN JACKSON BALLIET
Assistant Public Advocate

COUNSEL FOR APPELLEE:

ANDY BESHEAR
Attorney General Of Kentucky

JULIE SCOTT JERNIGAN
Assistant Attorney General

WILLIAM ROBERT LONG, JR.
Assistant Attorney General

JASON BRADLEY MOORE
Assistant Attorney General