RENDERED: SEPTEMBER 30, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1147-MR

HAROLD BAKER APPELLANT

v. APPEAL FROM WASHINGTON CIRCUIT COURT
HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 21-CR-00017

COMMONWEALTH OF KENTUCKY APPELLEE

AND

NO. 2021-CA-1148-MR

HAROLD BAKER APPELLANT

v. APPEAL FROM WASHINGTON CIRCUIT COURT
HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 21-CR-00043

COMMONWEALTH OF KENTUCKY APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CALDWELL, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE:  Harold Baker appeals from the Washington Circuit Court's final judgment and sentence of imprisonment, entered September 22, 2021, following the denial of his motion to suppress evidence and his subsequent conditional guilty plea.  We affirm.

## I. BACKGROUND

On December 26, 2020, Baker was pulled over for speeding by Officer Christopher Young of the Springfield Police Department.  Officer Young was driving in the opposing lane when he observed Baker's vehicle traveling eighty-two miles per hour in a fifty-five miles-per-hour zone.  Officer Young then turned his cruiser around and initiated a traffic stop of Baker's vehicle.  In addition to Baker himself, the only other occupant of the vehicle was Baker's two-year-old child in a booster seat.  While he was conducting the stop, Officer Young learned that Baker was driving on a suspended license and had an outstanding warrant for his arrest.  Due to Baker's suspended license, Officer Young called for a tow truck to remove the vehicle.  He also allowed Baker to call for a family member to come and retrieve the child.

During the course of the traffic stop, Deputy Trevor Beaty and Deputy Steven Pater, both of the Washington County Sheriff's Department, arrived to assist Officer Young. While Officer Young was using the radio in his cruiser, Deputy Beaty informed Baker that he was under arrest based on the outstanding warrant and ordered him to exit his vehicle. Baker became agitated and combative as he exited the vehicle, slamming the vehicle's door in the process.[1] Baker fought against being placed into handcuffs; at one point, Baker and the deputies tumbled to the ground and briefly struggled before the deputies could get Baker under control.

After Deputy Beaty secured Baker in the back seat of his cruiser, he returned to Baker's vehicle to conduct what he later described as a "search incident to arrest."[2] Deputy Beaty immediately saw the butt of a Glock 17 handgun beside the driver's seat. According to Deputy Beaty, he "knew Baker was a convicted felon" and was not permitted to be in possession of a firearm. While retrieving the handgun, the deputy discovered a plastic bag of methamphetamine immediately adjacent to it. Deputy Pater did not search the vehicle; instead, he focused on

[1] The deputies would later testify inconsistently with each other as to whether the door of the vehicle stayed open after Baker slammed it.

[2] Notably, Deputy Pater's account was inconsistent with Deputy Beaty's, testifying instead that Baker initially gave consent to search, but he then revoked his consent when he was removed from the vehicle.

removing the child from the vehicle and giving the child to one of Baker's family members, who had arrived at the scene.

As a result of this incident, the Washington County grand jury presented two separate indictments charging Baker with multiple offenses: possession of a handgun by a convicted felon;[3] first-degree possession of a controlled substance, first offense (methamphetamine);[4] first-degree wanton endangerment;[5] resisting arrest;[6] operating on a suspended or revoked operator's license;[7] speeding (greater than twenty-six miles per hour over the limit);[8] and two counts of being a first-degree persistent felony offender (PFO).[9]

Baker subsequently moved the trial court to suppress evidence, alleging law enforcement officers violated his constitutional rights against unreasonable search and seizure when they searched his vehicle without a warrant. During the suppression hearing, the trial court heard testimony from Officer Young, Deputy Beaty, and Deputy Pater. The trial court was troubled by the

---

[3]  Kentucky Revised Statute (KRS) 527.040(2)(a), a Class C felony.

[4]  KRS 218A.1415(1)(c), a Class D felony punishable by a maximum term of three years' imprisonment.

[5]  KRS 508.060, a Class D felony.

[6]  KRS 520.090, a Class A misdemeanor.

[7]  KRS 186.620(2), a Class B misdemeanor pursuant to KRS 186.990(3).

[8]  KRS 189.390, punishable by a fine as outlined in KRS 189.394.

[9]  KRS 532.080.

-4-

contradictions in the deputies' testimonies.  Analyzing the evidence, the trial court ruled there was no consent to search the vehicle and there was "little evidence that the totality of the circumstances resulted in reasonable suspicion to search the [vehicle]."  (Record (R.) at 35.)  Furthermore, there could be no legitimate search of the vehicle "pursuant to arrest," as Deputy Beaty alleged, because Baker was pulled over for a traffic violation, he was removed from his vehicle prior to the search, and the outstanding warrant for his arrest was due to unpaid fines; *see Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 1723, 173 L. Ed. 2d 485 (2009) (holding "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest").

Despite these strong reservations about the deputies' testimonies, the trial court denied Baker's motion in its written order, finding the evidence in Baker's vehicle was admissible pursuant to the inevitable discovery doctrine.  The trial court found "[t]he officers had the responsibility to retrieve the child from the vehicle and place said child with a family member" and "the firearm . . . would have been readily visible to any officer retrieving the child."  (R. at 35.)  The trial court then concluded that "the methamphetamine would have been discovered upon the seizure of the firearm."  (R. at 35.)  Finally, the trial court noted that, due

to Baker's suspended license and arrest, his vehicle would have been towed and subject to a routine inspection upon intake of the vehicle, a process which would also have resulted in the discovery of the methamphetamine.

Following the trial court's denial of his suppression motion, Baker negotiated a conditional guilty plea in which the Commonwealth agreed to amend his charge of felon in possession of a handgun to possession of a firearm, which lowered this charge to a Class D felony. The Commonwealth also agreed to dismiss the two PFO charges. In exchange, Baker agreed to accept a four-year sentence on all charges while reserving his right to appeal the denied suppression motion. This appeal followed.

## II. ANALYSIS

The sole issue in this case is whether the trial court erroneously denied Baker's motion to suppress evidence obtained from the warrantless search of his vehicle. "Warrantless searches are '*per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Robbins v. Commonwealth*, 336 S.W.3d 60, 63 (Ky. 2011) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967)).

"When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard

of review for conclusions of law." *Greer v. Commonwealth*, 514 S.W.3d 566, 568 (Ky. App. 2017) (citation omitted).

There is no question that Officer Young had a legitimate basis to stop Baker's vehicle when he observed the vehicle exceeding the speed limit. "A police officer is authorized to conduct a traffic stop when he or she reasonably believes that a traffic violation has occurred." *Commonwealth v. Lane*, 553 S.W.3d 203, 205 (Ky. 2018) (citing *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013)). Furthermore, the officer was permitted to engage in "ordinary inquiries incident to the traffic stop" including "checking the driver's license [and] determining whether there are outstanding warrants against the driver." *Olmeda v. Commonwealth*, 601 S.W.3d 183, 186-87 (Ky. App. 2020) (internal quotation marks citations and omitted).

Although Baker had a suspended license and an outstanding warrant leading to his arrest, law enforcement had no right to automatically conduct a subsequent warrantless search of his vehicle. Pursuant to the United States Supreme Court's holding in *Arizona v. Gant*,

> "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Otherwise, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."

*Owens v. Commonwealth*, 291 S.W.3d 704, 708 (Ky. 2009) (quoting *Gant*, 556 U.S. at 351, 129 S. Ct. at 1723-24). The deputies in this case testified how Baker was arrested and placed in a cruiser, well out of reach of the passenger compartment of his vehicle, before the search; therefore, the first prong of *Gant* did not apply. Similarly, because Baker's outstanding warrant was for nonpayment of fines and costs, it would not be reasonable to believe evidence of such would be found in his vehicle; therefore, the second prong of *Gant* also did not apply. Because the warrantless search of Baker's vehicle would be impermissible under either prong of *Gant*, we would be forced to conclude that law enforcement conducted an illegal search – unless another exception to the warrant requirement permitted it. *Id*.

In its order denying Baker's suppression motion, the trial court concluded that the evidence in the vehicle would be permitted under one of these exceptions to the warrant requirement, the inevitable discovery rule. The Kentucky Supreme Court has succinctly summarized the rule as follows:

> In *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984), the United States Supreme Court adopted the "inevitable discovery rule" to permit admission of evidence unlawfully obtained upon proof by a preponderance of the evidence that the same evidence would have been inevitably discovered by lawful means.

*Davis v. Commonwealth*, 484 S.W.3d 288, 294-95 (Ky. 2016) (quoting *Hughes v. Commonwealth*, 87 S.W.3d 850, 853 (Ky. 2002)).

In its order denying the suppression motion, the trial court focused on two key points which led it to conclude that the methamphetamine in the vehicle would be inevitably discovered. First, the trial court pointed out (1) that the officers were obliged to retrieve the two-year-old child in the booster seat and return the child to an adult family member, (2) the firearm in the front seat would be "readily visible to any officer retrieving the child[,]" and (3) "the methamphetamine would have been discovered upon the seizure of the firearm." (R. at 35.) We agree. Deputy Beaty testified that he knew Baker was a convicted felon and was therefore not permitted to possess a firearm. Although the trial court's order does not comment specifically on this point, we conclude the handgun in plain view in Baker's vehicle could be seized as contraband for that reason alone. Furthermore, because the plastic bag of methamphetamine was described as immediately underneath or adjacent to the handgun, we view no error in the trial court's conclusion that the seizure of the handgun would result in the discovery of the methamphetamine.

Second, the trial court concluded the methamphetamine in the vehicle would have been inevitably discovered because Baker had a suspended license and, therefore, could not drive the vehicle away. The court asserted "the vehicle

would have been towed and a routine inspection would have been performed upon the intake of the vehicle." (R. at 35.) Police may conduct inventory searches of a seized vehicle, but "the lawfulness of that inventory search turns first upon the reasonableness of the seizure." *Cobb v. Commonwealth*, 509 S.W.3d 705, 710 (Ky. 2017) (citations omitted). The Kentucky Supreme Court noted that "[p]olice may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard." *Id.* at 711 (quoting *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004)). Here, Officer Young unequivocally testified that he had already called for a tow truck for Baker's vehicle prior to Deputy Beaty's search. The trial court correctly surmised that law enforcement officers would have inevitably found the methamphetamine during the intake of Baker's vehicle after towing it.

Based on these principles, we conclude the trial court did not err when it found the methamphetamine in Baker's vehicle would have been inevitably discovered, either due to the contraband nature of the handgun in the front seat, or as a result of an inventory search of the vehicle following its tow to the impound yard.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and sentence.

-10-

ALL CONCUR.

BRIEFS FOR APPELLANT:

Travis Bewley
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky