RENDERED: DECEMBER 19, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0106-DG

TYLER STORY                                                                          APPELLANT

V.
                        ON REVIEW FROM COURT OF APPEALS
                                NO. 2021-CA-1048
                            CAMPBELL CIRCUIT COURT
                        NOS. 19-T-03549 & 21-XX-00001

COMMONWEALTH OF KENTUCKY                                              APPELLEE

**OPINION OF THE COURT BY JUSTICE BISIG**

**<u>REVERSING, VACATING, AND REMANDING</u>**

Appellant Tyler Story conditionally pled guilty to a charge of operating a motor vehicle under the influence of alcohol (DUI), first offense. On appeal, Story argued his conviction should be reversed and the charge dismissed for two reasons. First, Story contended the District Court wrongly deprived him of an opportunity to test his independent blood sample pursuant to KRS[1] 189A.103(7). Second, Story asserted the District Court also erred in instead allowing the Commonwealth to conduct a test on Story's independent blood sample. The Circuit Court and the Court of Appeals each affirmed.

We granted discretionary review to consider Story's claims. We conclude that while Story's statutory right to conduct his own independent blood test

---

[1] Kentucky Revised Statutes.

was infringed, the resulting error was harmless. However, we also conclude that allowing the Commonwealth to test Story's independent blood sample pursuant to a statutorily invalid warrant was erroneous. We further conclude that the Commonwealth also lacked consent to conduct such a test. Thus, because the search was therefore an infringement of Story's rights under the Fourth Amendment and Section 10 of the Kentucky Constitution, we reverse the District Court's denial of Story's motion to suppress the Commonwealth's testing of the independent blood sample, vacate his conviction, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of June 18, 2019, an officer of the Bellevue Police Department observed Tyler Story driving at a high rate of speed and with only one working headlight. The officer commenced pursuit and pulled Story over.

During the course of the stop, the officer noticed that Story had red cheeks, slurred speech, and a slow response time. He also noted an odor of alcohol coming from within Story's vehicle. The officer conducted standardized field sobriety testing, which Story did not satisfy. According to the officer, Story also stated he had been to two different bars that evening and that he had consumed multiple beers as well as two shots of Jagermeister. Story further admitted to the officer that he was intoxicated and should not have been driving.

There appears to be no dispute that no physical injury or death occurred in connection with this incident. The officer placed Story under arrest and

2

took him to jail. At the jail, the officer asked Story to submit to a breathalyzer test, and Story complied. The test returned a result of 0.178. The officer did not request that Story submit to any further testing.

Story then invoked his statutory right to an independent blood test under KRS 189A.103(7), which provides that a DUI suspect who has submitted to all officer-requested testing "shall be permitted to have [an appropriate medical professional] of his or her own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer." Such testing is conducted at the suspect's expense. KRS 189A.105(4).

The officer transported Story to a local hospital to obtain the requested independent blood test.[2] A hospital employee drew a sample of Story's blood, but rather than test the blood the employee instead handed the sample over to the officer. The officer transported Story back to the jail and placed the independent blood sample in the Bellevue Police Department evidence room.

On June 19, 2019, Story was charged with first-offense DUI.[3] On July 1, 2019, Story filed a motion to preserve his blood sample "so as to allow the Defendant to exercise his right to have said samples independently tested."

---

[2] The record does not include any body cam footage or other indication as to whether the officer made any representations to Story at the time of the independent blood draw as to whether the resulting sample could be tested or used by the Commonwealth in prosecuting Story.

[3] Story was also charged with expired registration plates, operating with one headlight, and reckless driving. These charges were later dismissed. The docket sheet for the date of Story's plea indicates they were dismissed as "merged." In the event they were dismissed as part of Story's plea agreement with the Commonwealth, our ultimate resolution here allowing Story to withdraw that plea would also mean those charges may be reinstated and pursued by the Commonwealth on remand.

3

The Campbell District Court granted that motion on July 12, 2019, ordering the Bellevue Police Department to "preserve the samples of [Story's] blood collected in this case so as to allow [Story] to exercise his right to have said samples independently tested."

On November 26, 2019, the District Court orally granted Story's motion to suppress the results of the breathalyzer test administered by the officer at the jail.[4] The Commonwealth, thus left without a test to use in its prosecution of Story, informed the Court that it wished to test Story's independent blood sample which remained in the Bellevue Police Department evidence room. Story objected and requested that the independent blood sample be returned to him. The District Court suggested it believed the Commonwealth could seek a warrant to test the independent blood sample, but scheduled a December 16, 2019 pretrial conference for the Commonwealth to report whether the sample could still be tested.

On November 27, 2019, Story moved the District Court to release the blood sample to him "to obtain [an] independent test" and further stated he would provide instructions to the Bellevue Police Department "as to what lab or person to release the sample to." At the December 16, 2019 pretrial conference, the District Court denied Story's motion for return of the blood sample. Despite granting Story's July 2019 motion to preserve the sample and Story's November 2019 motion for release of the sample, the District Court

---

[4] The District Court suppressed the breathalyzer test results due to an error in the administration of the test.

4

found that Story had abandoned the sample. The District Court determined that the sample became evidence when law enforcement took possession of it, and that the Commonwealth could test the sample if it obtained a warrant.

In February of 2020, Story filed a petition with the Campbell Circuit Court for a writ of prohibition that would bar the execution of a search warrant allowing the Commonwealth to test the independent blood sample. On June 26, 2020, the Circuit Court denied the petition. The Circuit Court reasoned that the District Court was not acting erroneously because the issue of whether the Commonwealth was entitled to a warrant to test an independent blood sample was an issue of first impression, and that Story in any event had an adequate remedy by way of appeal.

On September 29, 2020, a search warrant was issued allowing the Commonwealth to test Story's independent blood sample. The resulting test showed a blood alcohol level above the legal limit. On November 11, 2020, Story moved to suppress the Commonwealth's test results, arguing that KRS 189A.105(2)(b) barred the issuance of a warrant to the Commonwealth because the underlying incident did not involve death or physical injury. The District Court denied Story's motion to suppress. The District Court concluded that the Commonwealth could test the sample because Story had voluntarily provided it in the course of seeking his independent blood test.

On December 21, 2020, Story entered a conditional plea of guilty.[5] Story then appealed to the Circuit Court. The Circuit Court affirmed, holding that the District Court did not clearly err in finding that Story had abandoned the independent blood sample, and that the Commonwealth could test the sample because Story had voluntarily provided it. The Court of Appeals granted discretionary review and also affirmed. The Court of Appeals disagreed that Story had abandoned the blood sample. However, the Court of Appeals concluded that the blood sample was evidence and that the Commonwealth was entitled to a warrant to test the sample because Story had voluntarily given it.

Story then moved this Court for discretionary review, which we granted. Having carefully reviewed the record and the briefing of the parties, and having heard oral argument, we reverse the District Court's denial of Story's motion to suppress, vacate his conviction, and remand the charges against him for trial.

## ANALYSIS

Story raises two issues for review by this Court: (1) whether the District Court erred in denying his motion for a return of the blood sample for independent testing; and (2) whether the District Court erred in denying his motion to suppress the Commonwealth's testing of that sample. Story's

---

[5] In entering a conditional plea of guilt, a defendant pleads guilty but reserves "in writing the right, on appeal from the judgment, to review of the adverse determination of any specified trial or pretrial motion." Rule of Criminal Procedure (RCr) 8.09. Here, Story entered a guilty plea conditional upon his ability to appeal the District Court's denials of his motions 1) for return of the blood sample for independent testing, and 2) to suppress the results of the Commonwealth's blood test.

6

allegations of error are preserved given that he filed motions with the trial court seeking return of the blood sample for testing and to suppress the Commonwealth's testing results on the same grounds he presents here. *See Nichols v. Commonwealth,* 142 S.W.3d 683, 691 (Ky. 2004). We therefore review each issue in turn, providing additional facts as necessary.

## I. Though The District Court Erred In Denying Story's Motion For A Return Of His Blood Sample For Independent Testing Purposes, The Error Was Harmless.

Story first argues that in denying his motion for a return of the blood sample, the District Court violated his statutory right under KRS 189A.103(7) to an independent blood test. Story's argument raises only issues of statutory interpretation, and thus we conduct our review *de novo. Commonwealth v. Moore*, 545 S.W.3d 848, 850 (Ky. 2018) ("The interpretation of statutes is a matter of law which we review de novo."). In interpreting a statute, our duty is to construe its language "so as to effectuate the plain meaning and unambiguous intent expressed in the law." *Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet*, 983 S.W.2d 488, 492 (Ky. 1998).

The plain language of KRS 189A.103(7) is unequivocal:

> After [a DUI suspect] has submitted to all alcohol concentration tests and substance tests requested by the officer, the person tested *shall* be permitted to have [an appropriate medical professional] of his or her own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer.

(Emphasis added). As such, a DUI suspect who has submitted to all alcohol concentration and substance tests requested by law enforcement then has a statutory right to have an appropriate medical professional of his or her own

7

choosing administer independent testing. Here, Story complied with the officer's request to perform a breathalyzer test at the jail, and the officer requested no further testing from Story. Thus, Story then had a statutory right under KRS 189A.103(7) to independent testing by an appropriate medical professional of his choosing.

Story invoked this statutory right to independent testing, and the officer transported Story to the hospital for that purpose. Yet because the hospital did not immediately test Story's blood sample but rather handed it over to law enforcement, the Commonwealth now argues—and the District Court agreed—that Story abandoned the sample and thus no longer has a right to independent testing. We disagree.

In determining abandonment in the criminal context, we have held that

> [w]hat constitutes abandoned property has to be determined on a case-by-case basis. Therefore, the act of abandonment itself turns to a large degree upon the possessor's state of mind. To that extent, trial courts must weigh the evidence and consider the circumstances in reaching a conclusion as to whether the property has, in fact, been abandoned.

*Watkins v. Commonwealth*, 307 S.W.3d 628, 630 (Ky. 2010) (citations omitted).[6] The facts here foreclose any reasonable conclusion that Story ever manifested any intention to abandon the blood sample. First, the sample arose

---

[6] In *Watkins*, we considered whether a suspect had abandoned property such that he no longer had a "reasonable expectation of privacy" sufficient to confer standing to argue that a search and seizure of the property violated the Fourth Amendment. *Id.* at 629-30. Although the present case presents a different question, namely whether a party has abandoned a blood sample such that he or she no longer may assert the statutory right to an independent blood test, the two contexts are sufficiently similar that we find the *Watkins* test also appropriate here.

from Story's specific invocation of his statutory right to *independent* testing by a provider *of his choosing* and *at his expense*. This context makes plain that Story would have understood from the beginning that the sample was for his use and benefit.

Second, there is admittedly no evidence that Story voiced objection when the hospital handed the resulting blood sample over to law enforcement rather than to Story himself. However, at that point Story had little choice but to allow law enforcement to take possession of the sample. Quite simply, the sample had not yet been tested and Story was returning to jail where he undoubtedly would not have been allowed to keep the sample himself. Moreover, even had Story asked the hospital to provide the sample to him and been able to take the sample into the jail, doing so would have introduced significant chain-of-custody issues that may have rendered Story's independent testing of the sample inadmissible. Given the likely impossibility of a suspect retaining a sample in the jail for future testing and the significant chain-of-custody issues that would result from doing so in any event, it is not reasonable to require a suspect to demand possession of an untested blood sample when he is returning to jail to avoid a finding he has "abandoned" the sample.

Third, Story's conduct during the course of his prosecution only further forecloses any reasonable conclusion that he abandoned the sample. For example, less than two weeks after the blood draw, Story filed a motion with the District Court asking for the sample to be preserved. The District Court

granted the motion for the express purpose of allowing Story "to exercise his right to have said samples independently tested." When the Commonwealth later requested to test the sample itself, Story filed a motion for return of the sample the following day, again manifesting his plain intention to exercise dominion over the sample.

Taken together, 1) Story's invocation of his statutory right to an independent sample, 2) his entirely reasonable lack of objection to law enforcement retaining possession of that sample pending testing, and 3) his repeated motion practice in furtherance of preserving and exercising dominion over the sample leave no doubt that he never intended to abandon the sample. To the contrary, at all times he manifested an intention to retain the sample for his use and benefit. We thus agree with the Court of Appeals that the District and Circuit Courts erred in finding Story had no right to test the independent blood sample because he had abandoned it.

In sum, we find that Story had a statutory right to conduct an independent blood test. The District Court's refusal to return the sample to Story for the purpose of independent testing violated his rights under KRS 189A.103(7).

We pause to note that while we thus conclude Story was denied his statutory right to conduct independent testing, he was not entitled to a return of the sample for the purpose of destroying it or putting it to some other use. In his motion for return of the sample, Story stated he sought the sample so that he could test it. Nov. 27, 2019 Motion to Release Property at 1

10

("Defendant wishes to obtain [the statutory] independent test and needs this blood sample to be released."). He further stated that in the event his motion was granted, he would "provide instructions to the Bellevue Police Department as to what lab or person to release the sample to." *Id.*

In contrast, during the District Court's December 16, 2019 hearing regarding Story's motion, Story's counsel asserted Story sought a return of the blood sample as his property, suggesting he could do with as he pleased. We note that the specific statutory right afforded to a suspect under KRS 189A.103(7) is the right to have an appropriate medical professional "of his or her own choosing *administer a test.*" (Emphasis added.) This unambiguous language makes plain that the right afforded under the statute is to *conduct an independent test,* not to destroy the sample or use it for other purposes. As such, the District Court properly rejected Story's request for a return of the sample to do with as he pleased because the District Court could not be sure Story would test the sample rather than simply destroy it.

After it became clear the District Court would not return the sample without limitation, Story's counsel then explained that he alternatively moved for return of the sample *for the specific purpose of testing.* The District Court then suggested Story allow the Commonwealth to test the sample and return the remainder to Story for his independent test. Story declined that offer, and the District Court said in that event it believed a search warrant allowing the Commonwealth to test the blood should be granted. However, at that point the District Court instead should have allowed Story to identify an appropriate

11

medical professional to whom the Bellevue Police Department could send the sample for independent testing.

While the District Court erred in denying Story's statutory right to an independent blood test, we nonetheless find that error harmless. As we have previously noted, "[t]he purpose of allowing an accused an independent test is to obtain another result *to compare with or controvert the police officer's test.*" *Commonwealth v. Minix*, 3 S.W.3d 721, 724 (Ky. 1999) (emphasis added). Indeed, the statutory right to independent testing accrues only *after* the suspect has "submitted to all alcohol concentration tests and substance tests requested by the officer." KRS 189A.103(7). Thus, it is apparent that a suspect is afforded the right to independent testing for the purpose of assessing or controverting law enforcement's testing.

Here, Story had no need to assess or controvert law enforcement testing because the officer's only test—the breathalyzer conducted at the jail—was suppressed by the trial court. The plain statutory language contains no exception from the right to independent testing where law enforcement's testing is suppressed, and Story thus still should have been allowed to conduct an independent test. However, the District Court's error in refusing to allow him to do so was harmless because Story was not faced with law enforcement testing that he needed to assess or controvert. In other words, the statutory purpose served by the right to independent testing no longer existed after law enforcement's testing was suppressed. As such, the District Court's ruling, while erroneous, was also harmless.

12

## II. The Commonwealth's Testing Of Story's Blood Sample Even Pursuant To A Warrant Violated His Constitutional Rights And The District Court Erred In Denying His Motion To Suppress The Results Of That Testing.

Story next argues that the District Court erred in denying his motion to suppress the Commonwealth's testing of his independent blood sample. We apply a two-part analysis in determining whether a trial court's ruling regarding a motion to suppress is erroneous. First, we consider whether the trial court's findings of fact are clearly erroneous. *Haney v. Commonwealth*, 653 S.W.3d 559, 564 (Ky. 2022). We thus uphold those findings so long as "they are supported by substantial evidence." *Id.* (quoting *Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019)). Second, we "conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." *Id.* Here, Story raises only a legal issue, namely whether the Commonwealth should have been allowed to test the independent blood sample as a matter of law. Thus, because there are no contested factual findings at issue, our review is *de novo*.

We conclude that the Commonwealth's testing of Story's blood sample was a search within the scope of the Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution. We further conclude that the search was conducted in violation of these constitutional provisions because the Commonwealth had a search warrant but it was not valid, and because Story did not consent to the search. Nor could the Commonwealth test the sample simply because it was "evidence." Thus, because the Commonwealth's testing of the sample violated Story's

13

constitutional rights, the District Court erred in denying Story's motion to suppress the results of that testing.

### A. The Commonwealth Did Not Have A Valid Search Warrant For The Testing Of Story's Blood Sample.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. In a similar vein, Section 10 of the Kentucky Constitution likewise protects citizens from unreasonable searches and seizures by government agents. We have previously held that there is "no substantial difference" between these two provisions. *Commonwealth v. Reed*, 647 S.W.3d 237, 243 (Ky. 2022). As such, federal decisions interpreting and applying the Fourth Amendment providing useful guidance in construing Section 10. *Id.*

To comport with the Fourth Amendment and Section 10, a search conducted by law enforcement must be reasonable. *Commonwealth v. McCarthy*, 628 S.W.3d 18, 29 (Ky. 2021). Generally, in the absence of an applicable exception, a search is reasonable only if it is conducted pursuant to a valid search warrant. *Id.*

Here, we conclude that the Commonwealth's testing of Story's independent blood sample was a search within the scope of the Fourth Amendment and Section 10. A law enforcement draw of a DUI suspect's blood for the purpose of testing blood alcohol concentration is a search within the scope of the Fourth Amendment. *Id.* ("[D]rawing blood to test for BAC constitutes a search under the Fourth Amendment."). Importantly for

14

purposes of this case, so too is law enforcement's *testing* of the resulting blood sample. *Missouri v. McNeely*, 569 U.S. 141, 145 (2013) (referring to "the Fourth Amendment's warrant requirement for nonconsensual *blood testing*.") (emphasis added); *see also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989) ("We have long recognized that a 'compelled intrusio[n] into the body for blood to be analyzed for alcohol content' must be deemed a Fourth Amendment search . . . . The ensuing chemical analysis of the sample to obtain physiological data is a further invasion of the tested [person's] privacy interests.") (citations omitted). As such, the Commonwealth's testing of Story's blood sample was a search with the scope of the Fourth Amendment and Section 10, and thus reasonable and permissible only if conducted pursuant to a valid search warrant or some applicable exception to the warrant requirement. *See id.*

We further conclude that while the Commonwealth obtained a search warrant to test Story's blood sample, that warrant was not valid. As noted above, to justify a search on the basis of a search warrant, the warrant must be *valid*. *McCarthy*, 628 S.W.3d at 29 ("The Fourth Amendment generally requires police to obtain a *valid* search warrant in order for a search to be reasonable[.]") (emphasis added). At all times relevant to this case, KRS 189A.105(2)(b) provided that a judge could issue "a search warrant or other court order requiring a blood or urine test, or a combination thereof, of a [person charged with DUI] *when a person is killed or suffers physical injury . . .*

15

as a result of the incident in which the defendant has been charged."[7] (Emphasis added). In light of this statutory language, we held in *Combs v. Commonwealth*, 965 S.W.2d 161 (Ky. 1998), that as a corollary, "a search warrant *may not* be issued in the case of a DUI when neither death nor physical injury results." *Combs*, 965 S.W.2d at 164 (emphasis added). We thus concluded that the statute was a permissible legislative directive to "limit when a search warrant may be issued" in DUI cases to those matters in which the underlying incident involves death or physical injury.[8] *Id.* at 163.

Here, the incident underlying Story's DUI charge did not involve death or physical injury. As such, the issuance of a search warrant allowing the Commonwealth to test Story's blood sample violated the statutory limitation of warrants in DUI cases to matters involving death or physical injury. Indeed, *no* valid search warrant could be issued for testing of Story's blood because such warrants were statutorily prohibited. Ordinarily of course—and absent such a statutory prohibition—law enforcement *may* obtain a search warrant for the purpose of testing a DUI suspect's blood. *Id.* at 165; *Birchfield v. North Dakota*, 579 U.S. 438, 474 (2016) ("Nothing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so . . . ."). However, because

---

[7] Effective April 6, 2022—and thus after both Story's June 18, 2019 arrest and the September 29, 2020 issuance of a search warrant in this case—the statute was amended to provide that a warrant could be issued in any type of DUI case, regardless of whether it involved death or physical injury.

[8] We considered in *Combs* whether the statute violated separation-of-powers principles. We held that it did not, and that in any event comity could also be afforded to the statute as "a statutorily acceptable substitute for current judicial procedures." *Id.* at 163-65.

16

such a warrant was statutorily prohibited at all times relevant to this case, the issuance of such a warrant was not appropriate. *Combs*, 965 S.W.2d at 165. ("The ordinarily legitimate action of obtaining a search warrant when a suspect refuses cannot be used to avoid the standard set by the General Assembly which established the requirement of death or physical injury for a blood alcohol test."). As such, the warrant was invalid and cannot be used as a basis to justify the Commonwealth's testing. *See Commonwealth v. Shelton*, 766 S.W.2d 628, 629-30 (Ky. 1989) (holding that warrant issued in excess of judicial official's powers was invalid).

Finally, it also bears noting that the Commonwealth's testing of Story's blood sample does not fall within the good faith exception to the warrant requirement. That exception provides that "evidence obtained as a result of a search warrant which later was determined to be technically deficient [is not] suppressed if the police acted with objective reasonableness in relying on the warrant." *Id.* However, that exception does not apply here because the warrant issued for testing of Story's blood was not merely "technically deficient," but rather one that exceeded the statutory boundaries in light of these facts. *See id.* (holding good faith exception inapplicable where issuance of underlying search warrant exceeded judicial official's powers).

In addition, the Commonwealth cannot be found to have acted with "objective reasonableness" in relying on the warrant. Because the present case did not involve death or physical injury, the warrant was plainly prohibited by KRS 189A.105(2)(b). Indeed, the warrant was also obtained more than twenty

17

years after our explanation in *Combs* that the statute was effectively a directive by the General Assembly to "all executive branch employees, including police, *not* to seek a search warrant where injury or death does not result from a drunk driving offense." *Combs*, 965 S.W.2d at 163 (emphasis added). Thus, because the warrant was not merely technically deficient and because the Commonwealth could not have acted with objective reasonableness in relying on it, the good faith exception does not apply. Accordingly, the Commonwealth may not justify its testing of Story's blood on the basis of the invalid search warrant.

**B.      The Commonwealth Did Not Have Consent To Test Story's Blood Sample.**

In the absence of a valid warrant, the Commonwealth's testing of Story's blood sample was effectively warrantless and thus may be found to comply with Fourth Amendment requirements only if an exception to the warrant requirement applies. *McCarthy*, 628 S.W.3d at 32 ("[W]arrantless blood tests are invalid under the Fourth Amendment absent a valid exception to the warrant requirement."). One such exception exists where law enforcement obtains valid consent to conduct the search. *Id.* at 29. ("[C]onsent is a recognized exception which renders a warrantless search reasonable."). The Commonwealth argues that by voluntarily giving his blood sample for the purpose of obtaining an *independent* blood test, Story consented to the *Commonwealth's* testing of the sample. We disagree.

To establish that a party has consented to a search, the government must show "by a preponderance of the evidence" that the consent was

18

"voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *U.S. v. Sheckles*, 996 F.3d 330, 346 (6th Cir. 2021). Here, the only evidence relied on by the Commonwealth to show that Story voluntarily consented to government testing is the fact that he invoked his statutory right to conduct his own independent test. However, his invocation of that right in no way establishes that he consented to government testing of the resulting sample. Indeed, "[e]ven when a search is authorized by consent, the scope of the search is limited by the terms of its authorization." *Guzman v. Commonwealth*, 375 S.W.3d 805, 808 (Ky. 2012). The record is devoid of any indication Story authorized *government* testing of the blood sample. To the contrary, it is undisputed that he invoked his statutory right to conduct his *own independent testing*. The terms of his authorization—if any—were to a blood draw for that limited purpose.

Moreover, that Story's invocation of his statutory right to an independent blood test cannot reasonably be construed as consent to law enforcement testing of the blood is evident in the fact that law enforcement *had not even requested* such testing at the time Story gave the blood. Quite simply, Story cannot be deemed to have consented to a request not made at the time he purportedly gave consent. Certainly, he cannot be deemed to have done so voluntarily, unequivocally, specifically, and intelligently. *See Sheckles*, 996 F.3d at 346.

In addition, any consent purportedly arising automatically from a suspect's invocation of the statutory right to independent testing would be

19

impermissibly coercive. As noted above, the statutory purpose of an independent blood test is to afford the suspect an opportunity to compare or controvert law enforcement testing. *Minix*, 3 S.W.3d at 724. Consider the result if we were to hold that invocation of that statutory right also functions as consent to government testing. Suspects would then be required to either forego that right should they wish to withhold consent to later efforts by the government to test it, or to proceed with their independent test but at the cost of then consenting to any later government efforts to test the sample. Such consent would plainly be coercive.

Similarly, it also bears noting that few, if any suspects, would be willing to invoke their right to an independent blood test if the resulting sample could be tested by the Commonwealth in furtherance of its efforts to prove the suspect guilty. Were we to construe the statute otherwise, the statutory grant to the suspect of a right to such testing would be rendered wholly ineffectual and meaningless, a result we must avoid if possible. *Century Aluminum of Kentucky, GP v. Dep't of Rev.*, 664 S.W.3d 546, 558 (Ky. 2022) ("[W]hen interpreting a provision of a statute, a court should not, if possible, adopt a construction that renders a provision meaningless or ineffectual . . . .") (quoting *Schoenbachler v. Minyard*, 110 S.W.3d 776, 783 (Ky. 2003)).

It would also be inconsistent with the purposes of the Fourth Amendment and other exclusionary principles—and inherently unfair—to allow the Commonwealth to benefit from an exclusion of its own faulty tests by turning to a suspect's independent blood test as evidence to use against him.

20

As such, we cannot find that by invoking his statutory right to an independent blood test, Story consented to government testing of the resulting sample.[9]

We also note that even if Story *could* be deemed to have consented to voluntary testing of his independent blood sample by the government—which he did not—it is plain he has since withdrawn any such consent. Because a suspect has the right to define the scope of his consent to a search, as a corollary he also has a right to withdraw that consent. *See U.S. v. Jimenez,* 446 Fed. Appx. 771, 776 (6th Cir. 2011) ("[A] suspect may limit, delimit, or withdraw his consent . . . ."); *see also Commonwealth v. Fox,* 48 S.W.3d 24, 28 (Ky. 2001) (holding search warrant was required for search after suspect withdrew previously granted consent). Here, Story argued before the District Court that the Commonwealth should not be allowed to test the sample, and indeed pursued a writ before the Circuit Court seeking a prohibition against the issuance of a warrant for that purpose. It is thus plain that any alleged

---

[9] It also bears noting that under these circumstances, Story's consent to governmental testing of his independent blood sample also cannot be implied on the basis of KRS 189A.103(1), our implied consent statute. That statute provides that motorists in Kentucky "consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if an officer has reasonable grounds to believe that a violation of [the DUI statutes] has occurred." KRS 189A.103(1). Notably, this consent is to "tests . . . administered at the direction of a peace officer." KRS 189A.103(3)(a). In contrast, the statute refers to independent testing separately, referring to it as testing by an appropriate medical professional of the suspect's "own choosing" that is conducted "*in addition to* any tests administered at the direction of the peace officer." KRS 189A.103(7) (emphasis added). This plain statutory language makes clear that motorists consent only to testing "administered at the direction of a peace officer," while their own independent testing is conducted by others and independently of the officer-requested testing. As such, a motorist's implied consent under KRS 189.103(1) to law enforcement testing of an officer-requested sample is not consent to law enforcement testing of a suspect-requested independent sample.

consent that might be divined in Story's request for an independent blood test was unequivocally withdrawn during the course of litigation before the Commonwealth performed its test. Thus, even had Story consented to government testing of his independent sample—again, which he did not—any such consent would plainly have been withdrawn by his subsequent conduct in seeking to prevent the Commonwealth from testing the sample. In sum, there can be no reasonable finding that Story consented to the Commonwealth's testing of his independent blood sample.

### C. The Commonwealth Could Not Test Story's Blood Sample Simply Because It Was "Evidence."

The Court of Appeals held that the Commonwealth also could test the sample because KRS 189A.105(2) defines certain blood draws as "evidence." We disagree for two reasons. First, the Court of Appeals found that Story's blood sample was evidence based on its interpretation of KRS 189A.105(2). That statute provides that if *an officer* requests a test, the suspect shall be informed that either the refusal to take the test or the results of the test may be used as evidence against the suspect. However, while the statute thus provides that *officer-requested* testing may be used as evidence against the suspect, it is wholly silent as to whether *suspect-requested* testing may be used against the suspect. Thus, the statute does not support the Court of Appeals' conclusion that a suspect-requested blood sample may be used by the Commonwealth as evidence.

Second—and more importantly—even if the relevant statutes did define an independent blood sample as "evidence," the fact remains that the Fourth

22

Amendment and Section 10 prohibit the testing of blood samples in DUI cases without a valid search warrant. Thus, even considering the sample as "evidence," law enforcement would still be required to obtain a warrant to obtain and test it.[10] As noted above, no such valid warrant could be issued in this case because no death or physical injury resulted from the underlying incident.

In sum, the search warrant allowing the Commonwealth to test Story's independent blood sample was invalid because it exceeded the statutory guidelines to issue search warrants in DUI cases. As such, the Commonwealth's testing was warrantless. Story's invocation of his right to *independent* testing also cannot reasonably be construed as consent to *law enforcement* testing of the sample. Indeed, that Story did *not* consent is evident in his repeated motions before the District Court and his petition for a writ before the Circuit Court for return of the sample and to prevent the Commonwealth's testing. As such, the warrantless testing of Story's blood sample without his consent violated the Fourth Amendment and Section 10. The District Court erred in failing to suppress the results of that testing.

---

[10] This is true even where, as here, the sample is stored in a law enforcement evidence room. The Fourth Amendment protection against unreasonable searches does not disappear simply because law enforcement has possession of property with evidentiary value. For example, law enforcement generally must obtain a search warrant to search a cell phone seized during an arrest. *See Riley v. California*, 573 U.S. 373, 401 (2014) ("Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, *even when a cell phone is seized incident to arrest.*") (emphasis added). Thus, even where law enforcement has possession of a blood sample in its evidence room, it is nonetheless still required to obtain a warrant before testing the blood.

23

### III. The Appropriate Relief Is Suppression Of The Commonwealth's Testing Of Story's Independent Blood Sample Rather Than Dismissal Of The DUI Charge.

Story argues that the only appropriate disposition of this case given the District Court's errors is a dismissal of the DUI charge with prejudice. We disagree.

First, as a general matter the province of this Court does not include the power to remand criminal charges to the trial court for dismissal with prejudice. Rather, with exceptions regarding the right to speedy trial not relevant here, the dismissal of a criminal charge with prejudice is a function within the sole province of the prosecution. *Commonwealth v. Young*, 487 S.W.3d 430, 437 (Ky. 2015) ("[O]ur own rule is that absent circumstances constituting one of the 'rare exceptions, . . . a trial judge has no authority, absent consent of the Commonwealth's attorney, to dismiss, amend, or file away before trial a prosecution based on a good indictment.'") (emphasis omitted) (quoting *Hoskins v. Maricle*, 150 S.W.3d 1, 13 (Ky. 2004)).

Second—and in any event—the appropriate remedy for the errors that occurred below is to remand the matter for further proceedings consistent with this Opinion. As noted above, the District Court's denial of Story's right to independent testing was ultimately harmless because after the Commonwealth's breathalyzer test was suppressed, no prosecution testing remained that Story might need to assess or controvert by means of an independent test. And while the Commonwealth's testing of Story's blood sample without a valid warrant or consent violated his rights under the Fourth

24

Amendment and Section 10, the appropriate remedy is not dismissal of the DUI charge but rather to remand with instructions to allow Story to withdraw his guilty plea and to suppress the results of the Commonwealth's wrongful testing. *See* RCr 8.09 ("A defendant shall be allowed to withdraw [a conditional plea of guilty] upon prevailing on appeal."); *McCarthy*, 628 S.W.3d at 29 ("In the usual context of a criminal trial, the defendant is entitled to the suppression of, not only the evidence obtained through an unlawful search and seizure, but also any derivative use of that evidence.") (quoting *U.S. v. Calendra*, 414 U.S. 338, 354 (1974)). On remand, the Commonwealth may decide whether to proceed with the charges against Story on the basis of the remaining non-excluded evidence, or to dismiss the charges with prejudice pursuant to its prosecutorial prerogative if it so chooses.

## CONCLUSION

For the foregoing reasons, we vacate Story's conviction and remand to the District Court with instructions to allow Story to withdraw his guilty plea and to suppress the results of the Commonwealth's wrongful testing, and for further proceedings consistent with this Opinion.

All sitting. Conley, Lambert, and Thompson, JJ., concur. Keller, J., concurs by separate opinion, in which Conley and Thompson, JJ., join. VanMeter, C.J., concurs in part and dissents in part by separate opinion, in which Nickell, J., joins.

KELLER, J., CONCURRING: I concur with the well-written Majority Opinion that Tyler Story's motion to suppress should have been granted.

However, I write separately to address the unconstitutional seizure that occurred following the draw of Story's blood, when the officer accompanying him improperly took possession of his blood sample. Because the officer seized Story's blood sample in violation of his constitutional rights, the Commonwealth's eventual test of that sample should have been suppressed as fruit of the poisonous tree.

Following his arrest for driving under the influence, Story invoked his statutory right under KRS[11] 189A.103(7) to obtain an independent blood test. For reasons not stated in the record, the lab technician who drew Story's blood refused to test or store his blood sample. The police officer accompanying Story then took possession of that sample. The statutory scheme governing independent blood tests unfortunately does not contemplate what is required of the testing facility or the officer in these circumstances.

The Majority preliminarily considers whether Story's statutory rights were violated under KRS 189A.103(7). After concluding that his statutory rights were violated, the Majority then addresses the interplay of the Fourth Amendment. However, I believe the determinative question here is not whether Story's rights were violated under Kentucky statutory law. Instead, in cases such as this where potential constitutional concerns exist in tandem with statutory ambiguities, it is the role of this Court to ensure compliance with our state and federal constitutions while also effectuating the intent behind the statute.

---

[11] Kentucky Revised Statutes.

26

The Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution both stand for the proposition that "all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971)). Due to the similarity in animus and in language between the two provisions,[12] this Court "looks to the United States Supreme Court's interpretation and application of the Fourth Amendment for guidance in construing Section 10." *Commonwealth v. Reed*, 647 S.W.3d 237, 243 (Ky. 2022). In turn, I believe it necessary to begin here by determining whether there was an impermissible search or seizure under the Fourth Amendment.

In addressing this question, I would hold that (1) the officer's taking of Story's blood sample was a seizure for purposes of the Fourth Amendment; (2) the seizure took place without a warrant or an applicable exception to the warrant requirement; and (3) because the seizure violated Story's constitutional rights, the Commonwealth's eventual test of the blood sample must be suppressed as "fruit of the poisonous tree."

The collection and examination of evidence is considered a search and seizure for purposes of the Fourth Amendment, *see Cupp v. Murphy*, 412 U.S. 291, 295 (1973), if the government's action infringes upon an expectation of

---

[12] The only substantive variation in the language of Section 10 from the Fourth Amendment is that it utilizes the word *possessions* rather than *effects*.

27

privacy that society is prepared to recognize as reasonable. *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 616 (1989). The act of drawing an individual's blood "involve[s] a compelled physical intrusion beneath [the] skin and into [the] veins." *Missouri v. McNeely*, 569 U.S. 141, 148 (2013). This "invasion of bodily integrity" disturbs "an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)); *see also id.* at 174 (Roberts, C.J., concurring in part and dissenting in part) ("blood draws are . . . significant bodily intrusions). As is relevant here, the blood draw thereafter "places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading." *Birchfield v. North Dakota*, 579 U.S. 438, 464 (2016). "[R]equiring an arrestee to give up breath or blood" constitutes a significant intrusion upon the individual's privacy. *Id.* at 461, n.3. Furthermore, "[e]ven if the law enforcement agency is precluded from testing the blood for any other purpose than to measure BAC, the potential remains and may result in anxiety for the person tested." *Id.* at 464. Accordingly, not only does society clearly recognize a reasonable expectation of privacy in the initial draw of one's blood, but so too does it recognize the same expectation of privacy in any subsequent *possession* or *test* of the resultant specimen. *See Skinner*, 489 U.S. at 616 ("The ensuing chemical analysis of the [blood] sample to obtain physiological data is a further invasion of the tested employee's privacy interests.").

28

Here, unlike the compulsory blood-testing at issue in *Birchfield*, *McNeely*, and *Skinner*, Story *voluntarily* invoked his right to have his blood drawn for independent testing under KRS 189A.103(7). Regardless, this distinction is of no consequence, as the above cases reflect the fundamental principle that an individual maintains a reasonable expectation of privacy in his blood even after it is drawn. Therefore, the issue arose here when, following the initial blood draw, the lab technician declined to test or store Story's blood sample and law enforcement acquired and maintained possession of that blood sample. It is undisputed that the chemical analysis of a blood sample can reveal "a host of private medical facts about an [individual], including whether he or she is epileptic, pregnant, or diabetic." *Skinner*, 489 U.S. at 617. Even though the officer seemingly did not intend to do anything other than possess the blood sample, "the potential [to discern these private facts] remains and may result in anxiety for [Story]." *Birchfield*, 579 U.S. at 464. In turn, by taking the blood sample, the officer engaged in a significant intrusion upon Story's expectation of privacy. *Id.* at 461, n.3. Consequently, the officer's collection of Story's blood sample must be considered a seizure for purposes of the Fourth Amendment. *See Cupp*, 412 U.S. at 295.

In light of my conclusion that the officer's taking of the blood sample constituted a seizure, I turn next to what I consider to be the central issue before this Court: Does a DUI defendant's invocation of his statutory right to an independent blood test implicitly authorize the subsequent warrantless seizure

29

of that blood sample, such that the defendant's rights under the Fourth Amendment are not violated?

Following Fourth Amendment jurisprudence, the preliminary consideration is whether the officer's warrantless seizure of Story's blood sample was reasonable. *Birchfield*, 579 U.S. at 455. It is well settled that a seizure conducted without a valid warrant is "per se unreasonable . . . subject only to a few specifically established and delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Here, Story's invocation of his statutory right to obtain an independent blood test constituted a limited form of consent, in which he agreed to undergo the blood draw only for specific purposes and within precise bounds. This is important to the reasonableness inquiry, as consent to a search or seizure is "one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

To be valid, consent to a search or seizure must be voluntarily given. *Id.* at 222. Whether the consent is voluntary is assessed under a totality of the circumstances analysis, with the subject's "knowledge of his right to refuse consent [as] a factor to be taken into account." *Id.* at 218. Further, even where a search or seizure is authorized by consent, the scope of the search or seizure is still limited by the terms of its authorization. *Guzman v. Commonwealth*, 375 S.W.3d 805, 808 (Ky. 2012). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Thus, we

30

determine the scope of Story's consent by asking "'what would the typical reasonable person have understood by the exchange between the [officer] and [Story]?'" *Commonwealth v. Jennings*, 490 S.W.3d 339, 347 (Ky. 2016) (quoting *Jimeno*, 500 U.S., at 251).

Here, nothing in the record indicates that Story explicitly consented to the officer's seizure of his blood. Furthermore, it cannot be said that Story's invocation of his statutory right to obtain an independent blood test implicitly authorized the officer accompanying him to seize the resultant blood sample. I have no doubt that a reasonable person would believe that the testing hospital or an independent third party would maintain possession of the blood sample in these circumstances. In the alternative, I am confident that, at the very least, a reasonable person would expect that the sample would not *immediately* fall into the hands of law enforcement. Indeed, the very purpose behind KRS 189A.103(7) is to provide the accused with an opportunity to collect evidence for his own benefit, not the Commonwealth's. *See Commonwealth v. Minix*, 3 S.W.3d 721, 724 (Ky. 1999) ("The purpose of allowing an accused an independent blood test is to obtain another result to compare with or controvert the police officer's test."). Accordingly, it is clear that a reasonable person would not perceive Story's willingness to obtain an independent blood test as consent for the officer to thereafter retain possession of his blood sample. Such a result would render the purpose behind the statute meaningless and discourage any defendant from invoking its protections.

Finally, evidence obtained in violation of a defendant's constitutional rights is inadmissible against a criminal defendant in a state court. *Mapp v. Ohio*, 367 U.S. 643 (1961). The exclusionary rule applies not only to the illegally obtained evidence itself, but also to any other incriminating evidence derived from the primary evidence. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). Here, the officer's seizure of Story's blood sample was unconstitutional. Therefore, although eventually obtained by a warrant, the BAC test of Story's blood sample was an improper "fruit" of the officer's unlawful action, and as a result should have been suppressed.

Conley and Thompson, JJ., join.

VANMETER, C.J., CONCURRING IN PART AND DISSENTING IN PART: I concur in so much of the majority opinion as holds that the Campbell District Court properly denied Story's motion to return the blood sample to him for independent testing. The statute gives a DUI defendant the right to request a blood draw for independent sampling, KRS 189A.103(7), but once that blood is drawn, it becomes evidence which is available to both the defendant and the Commonwealth. In this case, the record reflects that Story, following suppression of his breath test, initially requested independent testing of his blood sample, but subsequently abandoned that statutory remedy in favor of return of the blood sample to him. In other words, he thereby waived his statutory right to direct the independent test of his blood sample. Story, furthermore, presents no valid argument that the Commonwealth's testing was

32

somehow defective or invalid.[13]   That noted, I respectfully dissent from the remainder of the majority opinion as holds that the district court erred in authorizing a search warrant and permitting the testing of Story's blood.  In my view, the search warrant was superfluous, did not violate Story's constitutional rights under the Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution and did not violate the statutory prohibition formerly contained in KRS 189A.105(2)(b).  Story consented to the collection of his blood sample and KRS 189A.105(2) states that the "results of [a blood] test may be used against the person in court as evidence[.]"  Also, under the facts of this case, interpreting KRS 189A.105(2)(b) to prohibit the issuance of a search warrant absent death or physical injury leads to an absurd result.

Story's constitutional rights under the Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution were not violated when the trial court permitted the Commonwealth to test Story's blood sample. Story consented to his blood draw for the purpose of an independent test to be conducted by someone of his own choosing and those test results were allowed to be used against him in court as evidence.

*Missouri v. McNeely*, 569 U.S. 141 (2013), is largely inapplicable because it involved a warrantless forced blood draw.  The issue in that case was

---

[13] Both the district court and the circuit court held that Story had abandoned the blood sample.  The correct analysis is that he waived his statutory right to an independent test.  Because chain of custody with respect to evidence of this type is important, the lower courts correctly denied Story's motion to return the blood sample to him.  In this case, a better solution would have been to split the sample to in order to permit Story to designate an independent laboratory to which his sample could be sent and tested and to permit the Commonwealth to have its sample tested as well.

whether the natural process of dissipation of alcohol from McNeely's blood created an exigent circumstance justifying a warrantless search. By contrast, this case involves consent to the blood draw, which Story understood at the time of the draw would necessarily involve testing for its blood alcohol level. Thus, the Court's statement in *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989), that an ensuing chemical analysis of a blood sample implicates privacy interests is similarly off point.[14]

Story's case is materially distinguishable from *Commonwealth v. McCarthy*, 628 S.W.3d 18 (Ky. 2021), again, because Story consented to a warrantless search of his blood. In *McCarthy*, the defendant moved *in limine* to exclude any evidence of his refusal to take a warrantless blood test because "a blood draw is a search of his person requiring a warrant[.]" 628 S.W.3d at 23. However, we explicitly noted that a search warrant is not required for a blood draw if the person consents to it. *Id.* at 29 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)) ("consent is a recognized exception which renders a warrantless search reasonable[]"). Story chose of his own volition to take advantage of a statutorily authorized blood draw at a local hospital. In fact, at the time he did so, immediately following his arrest, his decision was to his advantage since more time would pass between his last drink and the blood draw/test. In other words, more alcohol would dissipate from his blood giving rise to a lower blood alcohol concentration.

---

[14] *Skinner* suffers from the same factual deficit as *McNeely* in that it involved the constitutionality of warrantless blood, urine, and breath tests under Federal Railroad Administration's administrative regulations.

As to whether the Commonwealth is allowed to test that blood sample, KRS 189A.103(7) does not prohibit the Commonwealth from testing that blood sample. Further, KRS 189A.105(2)(a) requires officers to inform persons:

2. That, if a test is taken:

   a. The results of the test *may be used against the person in court as evidence* of violating KRS 189A.010(1); and

   b. The person has the right to have a test or tests of his or her blood performed by a person of his or her choosing described in KRS 189A.103 within a reasonable time of his or her arrest at the expense of the person arrested;

(Emphasis added). KRS 189A.105(2)(a) does not add any language or distinguish the tests conducted by the officer and the independent test sought out by a person. The purpose of KRS 189A.103(7) is to give a defendant the right to have an independently conducted test to assess the veracity of any of the law enforcement's tests. That right under KRS 189A.105(2)(a) states that the results of that independent test are evidence, and the Commonwealth is permitted to use those results against Story.

Therefore, Story's rights under the Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution were not violated because he consented to the warrantless search of his blood sample, no limitation was placed upon who could test the sample, and those blood test results could be used against him as evidence under KRS 189A.105(2)(a). And as previously noted, Story ultimately waived his statutory right to direct the independent test of his blood sample. Based on Story's consent to the collection of his blood sample and desire for an independent test, the district

35

court did not have to order a search warrant for the Commonwealth to also test the blood sample.

Since the district court's search warrant was unnecessary, any reliance on KRS 189A.105(2)(b) and this Court's decision in *Combs v. Commonwealth,* 965 S.W.2d 161 (Ky. 1998) to hold the warrant invalid is simply misplaced. Further, that interpretation of the statute produces an absurd result. In any interpretation of statutory authority, our lodestar is legislative intent. *Samons v. Ky. Farm Bureau Mut. Ins. Co.,* 399 S.W.3d 425, 429 (Ky. 2013); *Jefferson Cnty. Bd. of Educ. v. Fell,* 391 S.W.3d 713, 718 (Ky. 2012). This process includes construing statutes together to harmonize provisions. *Fell,* 391 S.W.3d at 720. This Court has also held that "[w]e should not add or subtract from the statute, nor should we interpret the statute to provide an absurd result." *Commonwealth v. Reynolds,* 136 S.W.3d 442, 445 (Ky. 2004); *see also Schoenbachler v. Minyard,* 110 S.W.3d 776, 783 (Ky. 2003) (stating "a court should not, if possible, … interpret a provision in a manner that brings about an absurd or unreasonable result[]").

All the provisions of KRS Chapter 189A detailing the procedures required following a DUI arrest, including the accused's rights, occur in the immediate aftermath of that arrest. *See* KRS 189A.100 (administration of preliminary breath tests and field sobriety tests); 189A.103 (consent to tests for alcohol concentration);[15] 189A.104 (alcohol or substance testing subject to refusal);

---

[15] Pointedly, KRS 189A.103(7) which gives the accused the right to his or her own blood test requires that the test "shall be conducted within a reasonable length of time."

36

189A.105 (effect of refusal to submit to tests, required information, court-ordered testing, withdrawal of blood, right to consult attorney); 189A.107 (license suspension for refusal to take alcohol or substance tests); 189A.110 (minimum period of detention); *see also Combs*, 965 S.W.2d at 163 (defendant arrested at 11:36 p.m., warrant for blood draw issued two hours later, and test administered two hours and thirty minutes following arrest). To apply any of these statutes to facts and circumstances occurring more than, for example, two days following the DUI arrest is absurd since no one would suggest that the accused retains any blood alcohol from the time of arrest.

Here, Story's blood sample was collected at a hospital on the night of his arrest in June 2019. The district court ordered testing one year and three months later. Simply stated, applying a statute intended for the immediate aftermath of a DUI arrest to court proceedings months later was not within the legislature's intent and leads to an absurd result.

Story's constitutional and statutory rights were not violated. I would affirm the Court of Appeals and lower courts and therefore uphold Story's conviction in all respects.

Nickell, J., joins.

COUNSEL FOR APPELLANT:

Joshua M. McIntosh
Josh McIntosh Law


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General